[Civ. No. 15283. Third Dist. Apr. 19, 1976.]

BOARD OF SUPERVISORS OF MERCED COUNTY,
Plaintiff and Appellant, v.
CALIFORNIA HIGHWAY COMMISSION et al.,
Defendants and Respondents.

## COUNSEL

Russell M. Koch, County Counsel, for Plaintiff and Appellant.

Harry S. Fenton, Kingsley T. Hoegstedt, Ralph Livingstone, and Bruce A. Behrens for Defendants and Respondents.

## OPINION

**REGAN, J.**—On August 23, 1973, the California Highway Commission ("CHC") approved construction of a state highway project (the "Pelendale Project") in Stanislaus County. On October 18, 1974, the Department of Transportation, acting pursuant to the CHC authorization, awarded a contract in an amount exceeding $11 million for construction of the Pelendale Project in accordance with freeway standards. The plaintiff, the Board of Supervisors of Merced County, asserted that the CHC should have given a higher priority to a project in their county (the "Delhi Project"). Accordingly, the plaintiff sought a writ of mandate directing the CHC (1) to rescind its decision advancing construction of the Pelendale Project to the fiscal year 1974-1975; (2) to cease work being performed, or to be performed, on the Pelendale Project; and (3) to rescind its allocation of funds to the Pelendale Project and reallocate those funds to the Delhi Project in Merced County.

The petition for writ of mandate was filed on December 10, 1974. It was heard on January 30, 1975, and on February 28, 1975, the court issued its order sustaining the CHC's demurrer without leave to amend. Plaintiff appeals.

During the years 1971 through 1974, the CHC, in pursuance of its lawful duties, adopted and approved a sequential order of priority of freeway and interchange construction in the geographical area known as

State Highway District Ten, which includes the counties of Stanislaus and Merced. The CHC purportedly assigned earlier construction dates to those highway projects with the highest accident rates and greatest safety hazards.

During the years 1971 through 1973, there were three proposed highway improvement projects on Highway 99 in the area in question. These were the Pelendale Project, the Delhi Project and the Keyes Project, also located in Stanislaus County. During this period, the CHC, upon recommendation of the Division of Highways, established the relative priority of construction among these three state-approved projects as follows: (1) Delhi; (2) Keyes; and (3) Pelendale. The priority ratings were apparently based (in part) on the total number of accidents and fatalities occurring in each particular area.

In the year 1973, the scheduled dates for construction of these planned highway projects were as follows:

| 1. | Delhi | 1974-1975 fiscal year. |
| 2. | Keyes | 1975-1976 fiscal year. |
| 3. | Pelendale | 1977-1978 fiscal year. |

During a public hearing on November 17, 1971, the CHC received a request by representatives of the City of Modesto (and other interested parties) to advance the construction of the Pelendale Project from fiscal year 1977-1978 to fiscal year 1974-1975. One of the persons who appeared before the CHC represented Ernest W. Hahn, Inc. (hereinafter "Hahn"), the developer of a regional shopping center in the Modesto area. At this public meeting Hahn offered up to $1 million of its own funds for the construction of the Pelendale Project, on the stipulation that the freeway could be completed in 1975.

At subsequent public hearings the CHC heard additional testimony and took additional evidence on the proposal by Hahn. It was clear to all parties concerned that the source of the $1 million offer was a private developer who apparently would benefit from the advancement of the Pelendale Project.

On August 13, 1973, the City of Modesto and Hahn entered into an agreement whereby the corporation agreed to give the City of Modesto $1 million for transfer to the state, provided that the CHC advanced the construction date of the Beckwith Interchange of the Pelendale Project

from fiscal year 1977-1978 to fiscal year 1974-1975. This sum was to be returned to Hahn with all accrued interest if the CHC failed to so advance the Pelendale Project.

Shortly thereafter, the City of Modesto and the state (acting by and through the Division of Highways) entered into an agreement whereby the division would use its best efforts to award a contract for the construction of the Pelendale Project at the earliest possible date (but in no event later than June 1, 1974), subject to allocation of funds by the CHC and to a $1 million corporate fund contribution from the City of Modesto.

On August 23, 1973, the CHC held a further public hearing upon the request to advance the Pelendale Project. On that date it made a final decision to include this project in the 1974-1975 fiscal year state highway budget.[1]

On September 18, 1974, the Division of Highways, pursuant to CHC authorization, prepared specifications and put out the Pelendale Project for bid. On October 18, 1974, bids were received on the project and a contract therefor was awarded for an amount in excess of $10 million.

In sustaining the CHC's demurrer to the petition for a writ of mandamus pursuant to section 1094.5 of the Code of Civil Procedure, the court ruled that such a petition may not be employed to review the CHC's quasi-legislative acts and, therefore, the petition did not state facts sufficient to constitute a cause of action.

The CHC consists of seven members appointed by the Governor with the advice and consent of the Senate. (Sts. & Hy. Code, § 70.) The Legislature has adopted a policy of freeway construction in the public interest. In furtherance of this policy, the Legislature has delegated a portion of its power to the CHC. (*Holloway* v. *Purcell* (1950) 35 Cal.2d 220, 231-232 [217 P.2d 665]; *Sinclair* v. *State of California* (1961) 194 Cal.App.2d 397, 402-403 [15 Cal.Rptr. 493]; see also *Sherman* v. *Buick* (1867) 32 Cal. 241, 252-253; Sts. & Hy. Code, § 79.) In particular, the

[1]The advancement of the Pelendale Project was not without opposition. In fact, the minutes of the August 23 meeting, the day of the final adoption of the project, reflect the following:

"In making their protest against the advancement of the Modesto Route 99 project, the speakers were particularly critical of the Commission's policy of giving consideration to the possible advancement of a given project in response to a conditional offer of a supplementary contribution, to assist in funding the project, by the local community."

Legislature has vested the CHC with the following responsibilities: "[(a)] Select, adopt, and determine the location for State highways on routes authorized by law.

"(b) Allocate, from the funds available therefor, moneys for the construction, improvement or maintenance of the various highways or portions thereof under the jurisdiction of the department. The commission may determine in each case the maximum sum of money that shall be made available therefor.

"(c) Authorize preliminary surveys to determine the advisability of including in or excluding from the State highway system any highway or portion thereof." (Sts. & Hy. Code, § 75; see *Holloway* v. *Purcell, supra,* 35 Cal.2d at pp. 231-232 [delegation of legislative power to commission valid].)

With this general background in mind, we turn to the contentions of the plaintiff:

 The supervisors first contend that mandamus (brought pursuant to § 1094.5 of Code Civ. Proc.) is a proper remedy to review a decision of the CHC. As authority for this statement the plaintiff relies upon some general language contained in the introduction to a text on the subject. (See Cal. Administrative Mandamus (Cont.Ed.Bar 1966) p. xv.) Although the board brought its petition for mandamus pursuant to section 1094.5 of the Code of Civil Procedure, it also cites the case of *Clean Air Constituency* v. *California State Air Resources Bd.* (1974) 11 Cal.3d 801, 809 [114 Cal.Rptr. 577, 523 P.2d 617], where the court states: "The courts may rely upon mandamus under Code of Civil Procedure section 1085 to review the validity of a quasi-legislative action. [Citation.] If an administrative agency has exceeded its authority in the exercise of its quasi-legislative powers, a court may issue a writ of mandate. [Citations.]" Thus the traditional writ of mandate is appropriate to review the actions of the CHC, not the more specific writ of section 1094.5.

 The plaintiff next contends that the CHC's failure to make findings of fact renders its decision changing highway project priority null and void. It relies upon the court's language in *Topanga Assn. For a Scenic Community* v. *County of Los Angeles* (1974) 11 Cal.3d 506, at pages 515 through 517 [113 Cal.Rptr. 836, 522 P.2d 12]. In essence, this passage stands for the proposition that administrative agencies must set

forth findings to support their adjudicatory decisions. The court, however, made it very clear that it was addressing itself to, problems arising under section 1094.5 of the Code of Civil Procedure, stating: "We further conclude that implicit in section 1094.5 is a requirement that the agency which renders the challenged decision must set forth findings to bridge the analytic gap between the raw evidence and ultimate decision or order." (11 Cal.3d at p. 515.)

Before proceeding further, we examine in greater detail the applicable principles of law.

■ It is well settled that the designation, location and funding of state highways is a legislative function. (*Holloway* v. *Purcell, supra,* 35 Cal.2d at pp. 229-232; *Sherman* v. *Buick, supra,* 32 Cal. at pp. 252-253 [to lay out and establish highways is exclusively within power and control of Legislature]; *Sinclair* v. *State of California, supra,* 194 Cal.App.2d at pp. 402-403; *Watson* v. *Greely* (1924) 67 Cal.App. 328, 338 [227 P. 664] [inherent power resides in state through its Legislature].) ■ As noted by the court in *Sinclair,* the Legislature has delegated a portion of its power to establish and construct state highways to the CHC, which delegation was made " 'within the framework of a sufficiently definite primary standard' " as outlined in the Streets and Highways Code. (194 Cal.App.2d at pp. 402-403.)

In this respect, it should also be noted that the CHC shares its powers concurrently with the Legislature as evidenced by section 79 of the Streets and Highways Code, which provides: "This delegation of power to the commission shall not be deemed exclusive, but any of the powers herein enumerated may continue to be exercised by the Legislature itself while in session." (See also Sts. & Hy. Code, §§ 253 et seq. and 300 et seq.)

In *Holloway,* our Supreme Court made the following pertinent remarks: "The Legislature has adopted a policy of freeway construction in the public interest. It has properly delegated to the highway commission the authority to determine when and where freeways will be constructed, and it has properly required that the authority be exercised in accord with the needs of the public interest. Such a delegation of legislative power is valid." (35 Cal.2d at pp. 231-232.)

Under this rule as declared in Holloway, the CHC has full authority to determine how and when a freeway will be constructed along a

designated route such as the one in question. (See Sts. & Hy. Code, § 399; in general see Silen, *Highway Location in California: The Federal Impact* (1970) 21 Hastings L.J. 781, 787-788.) ■ It is also clear that the actions and the decisions of the CHC are quasi-legislative in nature. (*Sinclair* v. *State of California, supra,* 194 Cal.App.2d at p. 406 [and the authorities cited therein]; see *Wilson* v. *Hidden Valley Mun. Water Dist.* (1967) 256 Cal.App.2d 271, 278-279 [63 Cal.Rptr. 889]; see also *Rivera* v. *Division of Industrial Welfare* (1968) 265 Cal.App.2d 576, 587 [71 Cal.Rptr. 739].) ■ Thus in determining when the Pelendale Project should be funded and constructed, the CHC acted as a legislative body, exercising quasi-legislative powers. Attempts to attack such quasi-legislative action were answered by the court in *Sinclair*: "By requesting the court to declare the resolution of the commission invalid, upon the ground that it acted in an arbitrary and capricious manner in refusing to accept the criteria suggested by them as its guide in selecting the freeway route under consideration, the plaintiffs seek to have the court prescribe the standard to guide the commission in the exercise of the functions delegated to it by the Legislature; as heretofore noted, the statutes delegating these functions have prescribed a legally adequate standard; and the court may not modify or enlarge that standard.

■ " 'An administrative order, legislative in character, is subject to the same tests as to validity as an act of the Legislature.' (*Knudsen Creamery Co.* v. *Brock,* 37 Cal.2d 485, 494 [234 P.2d 26].)

"This statement of the law is particularly pertinent to the instant case because section 79 of the Streets and Highways Code provides that the statutory 'delegation of power to the commission shall not be deemed exclusive, but any of the powers herein enumerated may continue to be exercised by the Legislature itself while in session.' If the Legislature had made the decision which is attacked by the instant legal proceedings, the obvious falsity of the charge of arbitrary and capricious conduct constituting an abuse of discretion, based on a refusal to accept the criteria advanced by the plaintiffs as a guide in making that decision, would be readily apparent. Under the stated rule, this charge is no less inapplicable because the decision was made by the commission." (194 Cal.App.2d at pp. 406-407.)

■ As we have previously noted, the plaintiff attempted to bring the petition for mandamus pursuant to section 1094.5 of the Code of Civil Procedure. However, in this particular case the CHC performed a

quasi-legislative function, and such action is not susceptible to review under section 1094.5. ██ ██ The proper scope and applicability of section 1094.5 (and ordinary mandamus) was considered by the court in *Strumsky* v. *San Diego County Employees Retirement Assn.* (1974) 11 Cal.3d 28, 34, footnote 2 [112 Cal.Rptr. 805, 520 P.2d 29]: "To be distinguished from adjudicatory determinations of an administrative agency are actions undertaken by such an agency in its legislative capacity. Review by means of section 1094.5 of the Code of Civil Procedure is not available with respect to acts of this kind, and when review is sought by means of ordinary mandate (Code Civ. Proc., § 1085) ' "judicial review is limited to an examination of the proceedings before the [agency] to determine whether [its] action has been arbitrary, capricious, or entirely lacking in evidentiary support, or whether [it] has failed to follow the procedure and give the notices required by law." ' [Citations.]" (See also *Wilson* v. *Hidden Valley Mun. Water Dist., supra,* 256 Cal.App.2d at pp. 277-278.)

██ In view of the foregoing, it is again apparent that administrative mandamus is not an appropriate remedy to review the CHC's quasi-legislative action with regard to the advancement of the Pelendale Project.[2] Since the plaintiff erred in seeking administrative mandamus, his reliance on the *Topanga* case is misplaced. The decision involved here is not adjudicatory or quasi-judicial in nature and thus no findings are required. (Cf. *City of Fairfield* v. *Superior Court* (1975) 14 Cal.3d 768, 778-779 [122 Cal.Rptr. 543, 537 P.2d 375]; *Topanga Assn. For a Scenic Community* v. *County of Los Angeles, supra,* 11 Cal.3d at p. 514, fn. 12.)

██ We also note that the prayer of the petition seeks not only to vacate quasi-legislative acts already undertaken, but also to direct the CHC to take certain affirmative legislative actions with regard to the Delhi Project. ██ Mandamus will not lie to compel a legislative body to perform legislative acts in a particular manner. (*Bowles* v. *Antonetti* (1966) 241 Cal.App.2d 283, 286-287 [50 Cal.Rptr. 370]; *City Council* v. *Superior Court* (1960) 179 Cal.App.2d 389, 394-395 [3 Cal.Rptr. 796].) ██ As the court so aptly noted in *Monarch Cablevision, Inc.* v. *City Council* (1966) 239 Cal.App.2d 206 [48 Cal.Rptr. 550]: "Generally, a court is without power to interfere with purely legislative action, in the sense that it may not command or prohibit legislative acts,

---

[2]Discretionary acts of certain agencies are reviewable under ordinary mandamus on the theory that discretion has been abused, but are not reviewable under section 1094.5 of the Code of Civil Procedure. (Cal. Administrative Mandamus (Cont.Ed.Bar 1975 Supp.) p. 14.)

whether the act contemplated or done be at the state level [citation] or the local level. [Citation.] The reason for this is a fundamental one—it would violate the basic constitutional concept of the separation of powers among the three coequal branches of government." (P. 211.) ■ We conclude that the allegations of the petition before us demonstrate that plaintiff is not entitled to the writ of mandamus.

In summary, neither traditional mandamus nor administrative review mandamus is available for the purpose of reviewing the CHC's action on the merits. There was no abuse of authority on the part of the CHC.

The judgment of dismissal is affirmed.

Friedman, Acting P. J., and Paras, J., concurred.