[Civ. No. 40960. First Dist., Div. Three. Apr. 17, 1978.]

ROLAND G. DAVIES et al., Plaintiffs and Appellants, v.
CONTRACTORS' STATE LICENSE BOARD et al.,
Defendants and Respondents;
CALIFORNIA LEGISLATIVE CONFERENCE OF THE
PLUMBING, HEATING AND PIPING INDUSTRY,
Intervener and Respondent.

## Counsel

Maloney, Chase, Fisher & Hurst, James T. Hurst and James R. Woods for Plaintiffs and Appellants.

Evelle J. Younger, Attorney General, and Ronald F. Russo, Deputy Attorney General, for Defendants and Respondents.

Dennis B. Kavanagh for Intervener and Respondent.

## Opinion

**FEINBERG, J.**—This case involves the question whether the respondent Contractors' State License Board (Board) erred in its classification procedure by allowing licensed plumbing contractors to install fire protection systems. We hold that it did not.

On June 13, 1975, appellants filed in the Superior Court in and for the County of San Francisco a petition for a writ of mandate on behalf of themselves and other California members of two associations, the associations being composed of contractors who install fire sprinkler systems. Named as respondents in the petition were the Board, the registrar thereof, and the individual members of the Board. The superior court thereupon issued an alternative writ. On August 4, 1975, the California Legislative Conference of the Plumbing, Heating and Piping Industry, a trade association, filed a complaint in intervention. For reasons that will become obvious, intervener aligned itself with the Board.

## *The Statutory Scheme*

Heretofore, the Legislature enacted the Contractors' License Law (Law). (Bus. & Prof. Code, § 7000 et seq.) The Law is administered by the Board, composed, at the times relevant here, of either nine or eleven members, most of whom were required to be contractors subject to the Law and the remainder of whom were public members. (Bus. & Prof. Code, §§ 7000.5, 7001, 7002.)[1]

The Board is given general authority to adopt rules and regulations reasonably necessary to carry out the provisions of the Law. (Bus. & Prof. Code, § 7008.)

Section 7055 of the Business and Professions Code classifies those contracting businesses subject to the Law into three categories. The category pertinent here is designated "specialty contracting."[2] Specifically, in section 7059 of the Law, the Board is given authority to promulgate such rules and regulations as are reasonably necessary to effect the classification of contractors "in a manner consistent with established usage and procedure as found in the construction business."[3]

---

[1] A 1975 amendment increased the number of members to thirteen, seven of whom are to be public members.

[2] Section 7058 of the Business and Professions Code insofar as relevant here provides: "A specialty contractor is a contractor whose operations as such are the performance of construction work requiring special skill and whose principal contracting business involves the use of specialized building trades or crafts.

"A specialty contractor includes a contractor whose operations are concerned with the installation and laying of carpets, linoleum, and resilient floor covering."

[3] The pertinent portion of Business and Professions Code section 7059 is: "The board may adopt reasonably necessary rules and regulations to effect the classification of contractors in a manner consistent with established usage and procedure as found in the

Pursuant to the rule-making authority vested in it, the Board has issued a series of regulations classifying and defining the various kinds of specialty contractors (Cal. Admin. Code, tit. 16, §§ 732-754.15.) Thus, for example, electrical contractor is classified and defined C-10 (Cal. Admin. Code, tit. 16, § 733); plumbing contractor, C-36 (Cal. Admin. Code, tit. 16, § 734); fire protection engineering contractor, C-16 (Cal. Admin. Code, tit. 16, § 754.9).

Further, the Board adopted a rule or regulation that: "(c) A licensee classified as a specialty contractor, as defined in Section 7058 [Bus. & Prof. Code], shall not act in the capacity of a contractor in any classification other than the one in which the licensee is classified. Nothing contained in this section shall prohibit the performance of work incidental or supplemental to the performance of a contract in a classification in which any contractor is licensed by the Board." (Cal. Admin. Code, tit. 16, § 760, subd. (c).)

### Genesis and History of the Problem

Until 1949, plumbing contractors had been performing fire protection installation work under the authority of a plumbing contractor's license (C-36). In 1949, the Board created a new classification of specialty contractor, fire protection engineering contractors (C-16). In 1964, the Board amended the definition of a plumbing contractor, the C-36 classification, to provide as follows: "A plumbing contractor is a specialty contractor whose principal contracting business is the execution of contracts, usually subcontracts, requiring a knowledge of the art and science of creating and maintaining sanitary conditions in buildings, structures, and works where people or animals live, work and assemble, by providing a permanent means for a supply of safe, pure and wholesome water, ample in volume and of suitable temperatures for drinking, cooking, bathing, washing and cleaning, and to cleanse all waste receptacles and like means for the reception and speedy and complete removal from the premises of all fluid and semi-fluid organic wastes and other impurities, *including piping for a safe and adequate supply of gases and liquids for any purpose whatsoever in connection with the use and occupancy of such premises* including piping for vacuum and air systems for medical, dental and industrial purposes." (The language added by the amendment is italicized.)

---

construction business, and may limit the field and scope of the operations of a licensed contractor to those in which he is classified and qualified to engage, as defined by Sections 7055, 7056, 7057, and 7058."

It should be noted that the 1964 amendment was at the behest of the Plumbing, Heating and Cooling Contractors of California (the predecessor of the present intervener) who had petitioned the Board to amend the C-36 classification so that plumbers could perform lawn sprinkler and irrigation work.

Approximately eight months later, appellants became concerned over the effect of the amendment insofar as it might permit C-36 licensees to do the same fire protection engineering work being done by C-16 licensees. Accordingly, they addressed a letter to the registrar[4] of the Board, requesting an interpretation of the amended C-36 classification. By letter, appellants received a reply from a Board examiner, purporting to be answering on behalf of the registrar, to the effect that the amendment to the C-36 classification did *not* authorize plumbers to do fire protection sprinkler piping. That interpretation, of course, satisfied appellants and they pursued the matter no further at that time. About two and a half years later, in June 1966, the plumbers, through their association, interveners here, asked the registrar to confirm their interpretation that the C-36 classification, as amended in 1964, permitted plumbers to install fire protection systems. The registrar responded and agreed, a complete about-face of the position taken by him in 1964. Thus began the dispute between appellants and the Board.

From 1966 to date, the Board has consistently maintained its 1966 interpretation of the C-36 classification, denying, after hearing a number of petitions by appellants, to either change its interpretation or amend the C-36 classification to exclude fire protection systems from its scope. The last of such hearings was in 1975. This suit followed.

### Scope of Review

■ Appellants assert that their petition for writ of mandate was appropriate under Code of Civil Procedure section 1085 or under Code of Civil Procedure section 1094.5 to review the action of the Board. We conceive the law to be otherwise.

It is clear that Code of Civil Procedure section 1094.5 is not available to review administrative action of an agency acting in a legislative capacity; it is "ordinary mandate," Code of Civil Procedure section 1085 that is appropriate. (*Strumsky* v. *San Diego County Employees Retire-*

---

[4]The registrar is the executive officer and secretary of the Board. (Bus. & Prof. Code, § 7011.)

*ment Assn.* (1974) 11 Cal.3d 28, 34-35, fn. 2 [112 Cal.Rptr. 805, 520 P.2d 29].) "[A] legislative action is the formulation of a rule to be applied to all future cases, while an adjudicatory act involves the actual application of such a rule to a specific set of existing facts." (*Strumsky, supra,* at p. 35, fn. 2.)

It cannot be disputed, therefore, that when the Board, in 1964, amended section 734 of its regulations (Cal. Admin. Code, tit. 16, § 734), it was acting in its legislative capacity for it was defining the scope of activities of C-36 licensees "to be applied to all future cases."

■ Where judicial review of administrative action by an agency acting in its legislative capacity is sought, that review begins and ends with a determination as to whether the agency's action has been " ' "arbitrary, capricious, or entirely lacking in evidentiary support, or whether [it] has failed to follow the procedure and give the notices required by law." ' " (*Strumsky, supra,* at p. 34, fn. 2, and cases cited therein; *Board of Supervisors* v. *California Highway Commission* (1976) 57 Cal.App.3d 952, 961 [129 Cal.Rptr. 504].)

■ But, appellant argues, the Board exceeded its authority in amending the C-36 classification since it can only classify "in a manner consistent with established usage and procedure as found in the construction business." (Bus. & Prof. Code, § 7059.) Since, the argument goes, it was not "established usage and procedure" for plumbers to do fire protection work, the C-36 amendment was void.[5] Therefore, the reviewing court must first, independently, weigh the evidence before the Board and determine whether the C-36 classification, as amended in 1964, is consistent and not in conflict with section 7059 and, second, if it is so "consistent and not in conflict," determine whether the classification is "arbitrary, capricious, or entirely lacking in evidentiary support."

It is true that a court reviewing an administrative regulation on ordinary mandate will independently determine whether the regulation is consistent and not in conflict with the enabling statute. (*Morris* v. *Williams* (1967) 67 Cal.2d 733 [63 Cal.Rptr. 689, 433 P.2d 697]; *Clean Air Constituency* v. *California State Air Resources Bd.* (1974) 11 Cal.3d 801

---

[5]Government Code section 11374 provides: "Whenever by the express or implied terms of any statute a state agency has authority to adopt regulations to implement, interpret, make specific or otherwise carry out the provisions of the statute, no regulation adopted is valid or effective unless consistent and not in conflict with the statute and reasonably necessary to effectuate the purpose of the statute.

"Any existing rules or regulations conflicting with this section are hereby repealed."

[114 Cal.Rptr. 577, 523 P.2d 617].) It is in the application of those principles to the case at bench that appellants fall into error.

■ There is nothing in the C-36 classification that is inconsistent or in conflict with section 7059 or the purposes of the Contractors' License Law. The only question is the factual one: are the job functions described in the C-36 classification "consistent with established usage and procedure in the construction business?" Here, the factual issue was disputed. The C-16 licensees, appellants, contended the classification was not consistent; the intervener-respondent, representing C-36 licensees, claimed it was consistent. The Board took evidence, promulgated and maintained its rule permitting the C-36 licensees to do C-16 work. Thus, our review is limited, as we have already said, to determining whether the Board's action was "arbitrary, capricious, or entirely lacking in evidentiary support." Were we to hold as appellants advocate, then the principle of review of administrative action, legislative in character, articulated in *Pitts* v. *Perluss* (1962) 58 Cal.2d 824 [27 Cal.Rptr. 19, 377 P.2d 83] and *Strumsky* v. *San Diego County Employees Retirement Assn., supra,* would become meaningless.

■ Appellants rely on *Morris* v. *Williams, supra,* and *Clean Air Constituency* v. *California State Air Resources Bd., supra,* as authority for their position. Their reliance is misplaced. These cases exemplify the distinction we have made. In the *Morris* case, the Health and Welfare agency promulgated certain regulations under the California Medical Assistance Program (Medi-Cal) reducing (1) the level of physicians' services to recipients of public assistance without eliminating the medically indigent from the Medi-Cal program; and (2) eliminating certain services entirely in the absence of a showing that proportionate reductions were not feasible to some extent. The regulations were issued because there were insufficient funds to operate the Medi-Cal program at the then current level of service.

The Supreme Court held the regulations invalid as being inconsistent and in conflict with the enabling legislation. The court construed that legislation to mandate that before physicians' services to public assistance recipients could be reduced, by reason of lack of funds, Medi-Cal assistance to the medically indigent had to be eliminated entirely from the program. The court further held that if after the elimination of the medically indigent from the Medi-Cal program, it became necessary to reduce services by reason of lack of funds, the statute directed that before any services could be terminated completely, all services must be

reduced proportionately to the extent feasible, so that if it was possible to reduce expenditures to *some* extent, without completely eliminating any service, the director was required by law to make that reduction *before* considering whether any services had to be discontinued entirely. The evidence was *undisputed* that it was so possible, ergo the regulation was inconsistent and in conflict with the law.

The *Clean Air Constituency* case, *supra,* involved the Air Resources Act. Briefly, it required the State Air Resources Board (ARB), the agency entrusted with implementing the act, to set emission control standards and to require the installation of emission control devices by a fixed date on automobiles manufactured in certain designated years. The ARB was given authority to delay the required installation "for extraordinary and compelling reasons only." At issue was a directive or resolution of the ARB delaying the required installation for a year because of the energy crisis. The Supreme Court held that under the statute, the ARB could delay mandatory installation of control devices for extraordinary and compelling reasons relating to the purposes of the Air Resources Act. Since that Act was designed to control and improve the quality of the air, it follows that the ARB could not delay implementation for purposes of conserving energy.

Both Supreme Court cases demonstrate that (1) where an administrative regulation on its face may be inconsistent with the statutes it is designed to implement, a reviewing court will, independently, make that determination; or (2) when the evidence is undisputed and that evidence discloses that the administrative regulation may violate the statutory mandate, a reviewing court will independently make that determination, or (3) where an administrative regulation, valid on its face, is enacted for a *declared* purpose purportedly inconsistent with the legislative intent in granting the administrative agency authority to take the contested action, a reviewing court will independently make that determination.

None of these principles is applicable to the case at bench. The authority of the Board to classify and define specialty contractors is clear and undisputed. The only question, and it was a disputed *factual* issue, was whether the C-36 classification, as amended, was consistent with established usage and procedure as found in the construction business. This is precisely the kind of issue which licensing boards are designed to address, bringing to bear their expertise in the field. It is not the courts which are sophisticated in their technical fields. In such a case, the rule of judicial review is bounded by *Board of Supervisors* v. *California*

*Highway Commission, supra; Strumsky v. San Diego County Employees Retirement Assn., supra;* and *Pitts v. Perluss, supra.*

### The Board's Action Was Neither
### Arbitrary, Capricious nor Entirely
### Lacking in Evidentiary Support.

Appellants contend that the Board erred because it exceeded the limitation of its power to classify "in a manner consistent with established usage and procedure." The argument is as follows: In 1949, when the Board provided that installation of fire protection systems was to be done by contractors licensed as Class C-16, they, in effect, took this work from C-36 plumbing contractors who, although they had been doing the work, were not operating under a license broad enough to include such work. In 1964, when section 734, the definition of Class C-36, was amended to allow plumbers to install piping "for any purpose whatsoever," this purpose could not include the installation of fire protection systems because these installations were within the exclusive province of the C-16 contractors. Appellants urge that the fact that C-36 contractors were actually doing some of this work between 1949 and 1964 is irrelevant since such work would have been illegal and illegal work cannot constitute an established usage and procedure. Thus, the interpretation of section 734 by the Board in 1966 and thereafter and its refusal to amend section 734 was improper.

We observe that the mandate of the statute, Business and Professions Code section 7059, is to classify in a manner *consistent with,* not *identical to,* established usage and procedure. If the Board must always adhere to the identical industry practices in effect, the Board would be limited to establishing new classifications based upon the emergence of special skills that had never before existed, or, as one witness before the Board remarked—barbers would still be doing surgery. We find this an unreasonable restriction of the Board's power, and not consonant with the fact that overlap exists to a significant degree among other classifications. So long as classification occurs in a manner consistent with established usage in the industry, the Board has the power to amend classifications as it sees fit.[6]

---

[6]That portion of the legislative scheme with which the interpretation of section 734 seems most out of step is with the Board's own classification structure. Specialty contractors are divided in some 35 specific classes with Class C-61 denominated as a limited specialty. It is the policy of the Board that licensees in one classification shall generally be prohibited from contracting in the field of any other classification in which they are not licensed. (Cal. Admin. Code, tit. 16, § 730.) The essential element of a

 Appellants consider it determinative that when section 734 was amended in 1964, there was no testimony as to the custom and usage of fire protection installation. The amendment to section 734 considered by the Board in 1964 dealt with plumbers installing piping for a safe and adequate supply of gases and liquids *for any purpose whatsoever*. Although the specific concerns considered at the 1964 hearing were the installation of lawn sprinkling systems and the installation of medical gas and vacuum piping, there was information given to the Board that plumbers did in fact install pipe for all purposes. Furthermore, it would be unreasonable to hold invalid a rule because an application for the rule can be found which was not foreseen at the time of its promulgation.

The Board took testimony at public hearings in 1966, 1973 and 1975, indicating that plumbers had been doing a substantial portion of fire protection installation, particularly in apartment buildings, and that their experience and expertise qualified them to do so. Not all of this work would be illegal for section 7059 of the Business and Professions Code also provides: "Nothing contained in this section shall prohibit a specialty contractor from taking and executing a contract involving the use of two or more crafts or trades, if the performance of the work in the crafts or trades, other than in which he is licensed, is incidental and supplemental to the performance of work in the craft for which the specialty contractor is licensed."

Thus, assuming appellants are correct in asserting that "established usage and procedure" cannot be based upon work illegally performed, given the incidental nature of fire protection work in general, the Board could find that plumbers legally acquired a great deal of expertise in that area.

In sum, the Board heard evidence and arguments on both sides as to the advisability of plumbers doing this work. The action of the Board,

---

statutory definition of a specialty classification is a "special skill." (See 55 Ops.Cal.Atty. Gen. 138, 139 (1972).) In contrast to all other classes, the C-61 class appears to be reserved for subclassifications of the other classes. Thus, lawn sprinkler installation could be done by C-36 plumbing contractors or by persons who limit themselves in the subclass and do not have to be qualified to do the entire gamut of plumbing jobs. (See 42 Ops.Cal.Atty.Gen. 191, 194 (1963); Cal. Admin. Code, tit. 16, § 732.) It seems to logically follow from this structure and from the policy enunciated in section 730 that the Board, having decided that C-36 plumbers are qualified to install fire protection systems, should have relegated fire protection engineering to Class C-61, limited specialty, rather than keeping it as a separate specialty classification. But, then, we observe that neither life, experience nor law has followed strict rules of logic.

based on the statements, arguments and contentions presented to it, is properly left to the Board's expertise. (See *Thole* v. *Structural Pest Control Bd.* (1974) 42 Cal.App.3d 732, 738 [117 Cal.Rptr. 206]; *McLaughlin* v. *Board of Medical Examiners* (1973) 35 Cal.App.3d 1010, 1017 [111 Cal.Rptr. 353].)

■ Appellants argue that the record establishes that Board members at the 1975 hearing departed from the standard of established usage and procedure and decided the matter because of other factors such as availability of labor, subcontracting and bidding problems, the consumer's best interest, and so forth. As we noted earlier, the established usage and procedure standard cannot reasonably be the only consideration of the Board. If there is a basic consistency with the practices of the industry, the Board may take into consideration other factors in making its decision. ■ It is a well established rule that the court may not inquire into the reasoning process of the Board members. So long as there is a rational basis from the objective facts, the actual motive for the decision becomes immaterial. (*Ensign Bickford Realty Corp.* v. *City Council* (1977) 68 Cal.App.3d 467, 478-479 [137 Cal.Rptr. 304].)

■ Here, there was considerable evidence that plumbers were doing a certain amount of fire sprinkler installation—in fact, there was no disagreement as to this point. The established usage and procedure limitation upon the Board's power to classify was thus satisfied. The Board's problem was then to decide which of the two licensed classes should do the work. They decided, for various reasons, that the work could be done under either license. That decision was neither arbitrary, capricious, nor lacking in substantial evidentiary support.

Finally, appellants argue that at the public hearing in 1964 that led to the C-36 amendment, there was no evidence adduced regarding established usage and procedure in the construction business regarding installation of fire protection systems. Assuming appellants are correct, after the 1966 interpretation of the Board, appellants had three public hearings, 1966, 1973 and 1975, before the Board on their petitions to further amend the C-36 classification. In all of those hearings, as we have said, there was substantial evidence to support the Board's action.

Whatever defect there may have been in the Board's 1964 action was cured by its subsequent proceedings.

The judgment is affirmed.

Scott, Acting P. J., and Terry, J.,* concurred.

On May 2, 1978, the opinion was modified to read as printed above. Appellants' petition for a hearing by the Supreme Court was denied June 15, 1978. Bird, C. J., did not participate therein.

*Assigned by the Chairperson of the Judicial Council.