TO BE PUBLISHED IN THE OFFICIAL REPORTS

OFFICE OF THE ATTORNEY GENERAL
State of California

JOHN K. VAN DE KAMP
Attorney General

------------------------------
:
OPINION                            :
                                   :        No. 88-307
       of                          :
                                   :        JULY 6, 1988
JOHN K. VAN DE KAMP                :
   Attorney General                :
                                   :
RODNEY O. LILYQUIST                :
Deputy Attorney General            :
                                   :
-----------------------------------------------------------------

THE HONORABLE MARIAN BERGESON, MEMBER, CALIFORNIA SENATE, has requested an opinion on the following questions:

1. When must an airport land use commission adopt an airport land use plan for each public use airport within its jurisdiction?

2. What judicial remedies are available to compel an airport land use commission to adopt an airport land use plan for each public use airport within its jurisdiction?

CONCLUSIONS

1. An airport land use commission has a reasonable period of time to adopt an airport land use plan for each public use airport within its jurisdiction; what constitutes a reasonable period of time would depend upon the relevant circumstances of each case.

2. The only judicial remedies available to compel an airport land use commission to adopt an airport land use plan for each public use airport within its jurisdiction are those contained in Public Utilities Code section 21679.

ANALYSIS

The Legislature has enacted a comprehensive statutory scheme (Pub. Util. Code, §§ 21670-21679)[1] requiring the establishment of an airport land use commission ("commission") in each county having a public use airport. One of the primary duties of a commission is to adopt an airport land use plan ("plan") for each such airport. (§ 21675.) The two questions presented for resolution concern the date by which a plan is to be adopted for an airport and the judicial remedies available to compel a commission to adopt a plan.

The legislation requiring the establishment of a commission in each county with a public use airport was enacted in 1967. (Stats. 1967, ch. 852, § 1.) The duty to adopt a plan for each such airport was imposed in 1970. (Stats. 1970, ch. 1182, § 5.) No statutory time limit, however, was or has been set by the Legislature for adoption of a plan. We are informed that of 283 public use airports in California, only 78 are covered by a plan. Every county in the state, except San Francisco, has at least one public use airport.

Subdivision (a) of section 21670 states the purposes of the legislative scheme:

"(1) It is in the public interest to provide for the orderly development of each public use airport in this state and the area surrounding these airports so as to promote the overall goals and objectives of the California airport noise standards adopted pursuant to Section 21669 and to prevent the creation of new noise and safety problems.

"(2) It is the purpose of this article to protect public health, safety, and welfare by ensuring the orderly expansion of airports and the adoption of land use measures that minimize the public's exposure to excessive noise and safety hazards within areas around public airports to the extent that these areas are not already devoted to incompatible uses."[2]

Subdivision (b) of section 21670 requires the establishment of a commission under specified conditions:

"In order to achieve the purposes of this article, every county in which there is located an airport which is served by a scheduled airline shall establish an airport land use commission. Every county, in which there is located an airport which is not served by a scheduled airline, but is operated for the benefit of the general public, shall establish an airport land use commission, except that the board of supervisors

---

[1]All references to the Public Utilities Code prior to footnote 7 are by section number only.

[2]Section 21669 requires the Department of Transportation to adopt noise standards "based upon the level of noise acceptable to a reasonable person residing in the vicinity of the airport."

of the county may, after consultation with the appropriate airport operators and affected local entities and after a public hearing, adopt a resolution finding that there are no noise, public safety, or land use issues affecting any airport in the county which require the creation of a commission and declaring the county exempt from that requirement. . . ."[3]

Section 21674 describes the responsibilities of a commission:

"The commission has the following powers and duties, subject to the limitations upon its jurisdiction set forth in Section 21676:

"(a)  To assist local agencies in ensuring compatible land uses in the vicinity of all new airports and in the vicinity of existing airports to the extent that the land in the vicinity of those airports is not already devoted to incompatible uses.

"(b)  To coordinate planning at the state, regional, and local levels so as to provide for the orderly development of air transportation, while at the same time protecting the public health, safety, and welfare.

"(c)  To prepare and adopt an airport land use plan pursuant to Section 21675.

"(d)  To review the plans, regulations, and other actions of local agencies and airport operators pursuant to Section 21676.

"(e)  The powers of the commission shall in no way be construed to give the commission jurisdiction over the operation of any airport.

"(f)  In order to carry out its responsibilities, the commission may adopt rules and regulations consistent with this article."  (Emphasis added.)[4]

Section 21675 contains the requirements for each plan:

"(a)  Each commission shall formulate a comprehensive land use plan that will provide for the orderly growth of each public airport and the area surrounding the airport within the jurisdiction of the commission, and will safeguard the general welfare of the inhabitants within the vicinity of the airport and the public in general. The commission plan shall include a long-range master plan that reflects the

---

[3]In certain circumstances, "an appropriately designated body" may take the place of a commission.  (§ 21670.1.)

[4]Section 21676 allows local agencies and airport operators to overrule certain commission determinations with respect to their plans, regulations and other actions.

anticipated growth of the airport during at least the next 20 years. In formulating a land use plan, the commission may develop height restrictions on buildings, may specify use of land, and may determine building standards, including soundproofing adjacent to airports, within the planning area. The comprehensive land use plan shall be reviewed as often as necessary in order to accomplish its purposes, but shall not be amended more than once in any calendar year.

"(b) The commission may include, within its plan formulated pursuant to subdivision (a), the area within the jurisdiction of the commission surrounding any federal military airport for all the purposes specified in subdivision (a). This subdivision does not give the commission any jurisdiction or authority over the territory or operations of any military airport.

"(c) The planning boundaries shall be established by the commission after hearing and consultation with the involved agencies."

1. Plan Adoption Deadline

The first question concerns a county with a public use airport for which a commission has been established. The only issue is the length of time given to the commission for adoption of a plan pursuant to section 21675.

In Resource Defense Fund v. Local Agency Formation Com. (1983) 138 Cal.App.3d 987, the Court of Appeal examined the same type of question with respect to the adoption of "spheres of influence" by a local agency formation commission ("LAFCO"). The Legislature had not provided a statutory deadline for such adoption, and in analyzing the issue (id. at p. 992), the court quoted from and agreed with our conclusion in 60 Ops.Cal.Atty.Gen. 118, 120 (1977):

"'Notwithstanding that spheres of influence have been mandatory there is no express legislative deadline for their adoption by LAFCO. LAFCO, however, must adopt spheres within a reasonable period of time.'"

The same "reasonable time" standard was adopted by the Supreme Court in Griffin v. Board of Supervisors (1963) 60 Cal.2d 318, 322, for reapportioning county supervisorial districts where no statutory deadline had been given by the Legislature.

In accordance with our prior opinion and these cases, we believe that a commission would have a reasonable period of time in which to adopt a plan for each public use airport within its jurisdiction. When the period commences would depend upon three factors: (1) existence of the airport, (2) existence of the commission, and (3) January 1, 1971, the date on which the plan requirement of section 21675 became effective. For airports and commissions established prior to January 1, 1971, the time period began on January 1, 1971. For a later created airport or commission, the time began when both the airport and commission were in existence.

The exact amount of time that would be reasonable in adopting a plan would depend upon the individual circumstances. Time must be allowed for public hearings and consultations with affected local agencies. (See § 21675, sub. (c).) The plan itself is to be "comprehensive" and reflect "the anticipated growth of the airport during at least the next 20 years." (§ 21675, sub. (a).) Understandably, what period of time is reasonable for one commission to meet its duties would not necessarily be reasonable for another. The potential number and complexities of various land uses surrounding an airport in a sparsely populated county would not be the same as for a large international airport in a metropolitan area. (See § 21670, subd. (b).)

While the length of a reasonable period of time may vary for the adoption of different airport plans, certain limits may be stated indicating what would be an unreasonable period of time under any and all circumstances. In our prior opinion concerning the adoption of spheres of influence by a LAFCO, we concluded that "[i]t is our view that the six years which have elapsed since addition of the sphere requirement exceed a reasonable time." (60 Ops.Cal.Atty.Gen. 118, 120 (1977).) We based our conclusion in part on the fact that the Legislature seemingly considered 30 months to be a reasonable time period for a newly incorporated city to adopt a comprehensive general plan:

> "In an analogous situation, the Legislature has required new cities incorporated after September 30, 1974, to adopt comprehensive general plans with all nine mandatory elements within 30 months (2-1/2 years) after incorporation. Such new cities must also ensure that their zoning is consistent with their adopted general plans within three years of incorporation. Gov. Code § 65302.5. The complexities faced by LAFCOs in preparing spheres of influence plans would seem to be no greater than the difficulties faced by new cities in meeting the above 2-1/2 and 3-year planning deadlines." (Id. at p. 120, fn. 4.)[5]

The court in Resource Defense Fund v. Local Agency Formation Com., supra, 138 Cal.App.3d 987, agreed with our conclusion, pointing out:

> "On the question of reasonableness, we note that an additional five years have passed since the Attorney General's opinion quoted above, and therefore it now may be said, 'It is our view that the [eleven] years which have elapsed since addition of the sphere requirement exceed a reasonable time.'" (Id. at p. 993, fn. 9.)

As in our prior opinion, we do not believe that the adoption of a plan by a commission presents complexities greater than the difficulties faced by a newly incorporated city in adopting a comprehensive general plan. The passing of six years, therefore, without adoption of a plan would exceed a reasonable period of time for a commission to act.

---

[5]Currently a newly incorporated city or a newly formed county is given a 30-month period to adopt a general plan, and it may obtain two one-year extensions under narrowly drawn conditions. (Gov. Code, §§ 65360-65362.)

The fact that a reasonable time period has expired for the adoption of a particular plan does not, of course, excuse further commission action or the adoption of the plan. It is a continuing obligation made all the more immediate in its performance. (See Resource Defense Fund v. Local Agency Formation Com., supra, 138 Cal.App.3d 987, 993-994; 60 Ops.Cal.Atty.Gen. 118, 121-122 (1977).) To further such immediate action by a commission pursuant to the mandate of section 21675, the Legislature enacted section 21679 in 1987. (Stats. 1987, ch. 1018, § 15.) The later statute states:

"(a) In any county in which there is no airport land use commission or other body designated to assume the responsibilities of an airport land use commission, or in which the commission or other designated body has not adopted an airport land use plan, an interested party may initiate proceedings in a court of competent jurisdiction to postpone the effective date of a zoning change, a zoning variance, the issuance of a permit, or the adoption of a regulation by a local agency, which directly affects the use of land within one mile of the boundary of a public airport within the county.

"(b) The court may issue an injunction which postpones the effective date of the zoning change, zoning variance, permit, or regulation until the governing body of the local agency which took the action does one of the following:

"(1) In the case of an action which is a legislative act, adopts a resolution declaring that the proposed action is consistent with the purposes of this article stated in Section 21670.

"(2) In the case of an action which is not a legislative act, adopts a resolution making findings based on substantial evidence in the record that the proposed action is consistent with the purposes of this article stated in Section 21670.

"(3) Rescinds the action.

"(4) Amends its action to make it consistent with the purposes of this article stated in Section 21670, and complies with either paragraph (1) or (2) of this subdivision, whichever is applicable.

"(c) The court shall not issue an injunction pursuant to subdivision (b) if the local agency which took the action demonstrates that the general plan and any applicable specific plan of the agency accomplishes the purposes of an airport land use plan as provided in Section 21675.

"(d) An action brought pursuant to subdivision (a) shall be commenced within 30 days of the decision or within the appropriate time periods set by Section 21167 of the Public Resources Code, whichever is longer.

"(e)  If the governing body of the local agency adopts a resolution pursuant to subdivision (b) with respect to a publicly owned airport that the local agency does not operate, the operator of the airport shall be immune from liability for damages to property or personal injury from the local agency's decision to proceed with the zoning change, zoning variance, permit, or regulation.

"(f)  As used in this section, 'interested party' means any owner of land within two miles of the boundary of the airport or any organization with a demonstrated interest in airport safety and efficiency."[6]

Section 21679 allows a court to enjoin any and all development within one mile of an airport until a plan is adopted or the equivalent decisions are made accomplishing the stated purposes of a plan.  We find nothing in section 21679 that excuses or delays beyond a reasonable period of time the adoption of a plan.  We have searched the legislative history of section 21679 and have found no such indication.  Indeed, the report of the Assembly Committee on Local Government stated with respect to the proposed legislation:

"Current law requires each commission to prepare a comprehensive land use plan to provide for the orderly growth of airports and surrounding areas and to safeguard the welfare of the local inhabitants and the general public.  The land use plan may not be amended more than once in a calendar year.

"This bill would require the land use plan to be reviewed as often as necessary in order to accomplish its purposes.

"Current law does not contain a procedure for delaying or negating land use decisions in a county which does not have an ALUC or has not adopted an airport land use plan.

"This bill would allow any interested party to file a legal action to postpone the effective date of a zoning change, a zoning variance, permit, or local land use regulation which directly affects land use within one mile of a public airport.  The court would be required to issue an injunction postponing the effective date of the land use action until the city or county adopts a resolution declaring that the proposed action is compatible with the safety of air navigation and the promotion of air commerce at the public airport."

The purpose of enacting section 21679 was thus to provide a legal procedure for delaying or negating land use decisions in the specified circumstances.  The statute was not intended to change the law regarding the necessity for adopting a plan.  Recognizing that a plan does not exist

---

[6]Public Resources Code section 21167 provides up to 180 days to contest a public agency's decision under specified conditions.

is clearly distinguishable from no longer requiring the adoption of a plan within a reasonable period of time.

We also find support for our determination in the language of section 21676, subdivision (a):

"Each local agency whose general plan includes areas covered by an airport land use commission plan shall, by July 1, 1983, submit a copy of its plan or specific plans to the airport land use commission. The commission shall determine by August 31, 1983, whether the plan or plans are consistent or inconsistent with the commission's plan. . . ."

Obviously the Legislature intended for a commission to have a plan prior to August 31, 1983, in order to compare it by such date with the general or specific plan of each local agency affected thereby. It is axiomatic that a statute is to "be construed 'in the context of the entire statutory system of which it is a part'" (People v. Woodhead (1987) 43 Cal.3d 1002, 1009) and "that significance should be attributed to every word and phrase of a statute" (id. at p. 1010). Reading sections 21675 and 21676 together, we find -- at a minimum -- that for a commission and airport existing on January 1, 1971, a reasonable period of time to adopt a plan for the airport expired on August 31, 1983, if not before.

In answer to the first question, therefore, we conclude that a commission has a reasonable period of time in which to adopt a plan for each public use airport within its jurisdiction; what constitutes a reasonable period of time would be dependent upon the individual circumstances involved.

2. Available Remedies

The second question concerns the judicial remedies available to compel the adoption of a plan by a commission. We conclude that only section 21679 provides such remedies.

As noted in response to the first question, section 21679 authorizes the initiation of judicial proceedings to postpone the effective date of "a zoning change, a zoning variance, the issuance of a permit, or the adoption of a regulation by the local agency, which directly affects the use of land within one mile of the boundary of a public airport within the county" where no plan has been adopted by a commission. We believe the words "issuance of a permit" in section 21679 includes building permits as well as special use permits. In effect, a court is authorized under the statute to enjoin any and all development near an airport until a plan is adopted or the equivalent decisions are made that accomplish the specified purposes of a plan. While the statute does not directly compel adoption of a plan, it does authorize the placement of restrictions upon the operations of local governments until a plan is adopted. The practical effect of section 21679 is thus to indirectly compel adoption of a plan.

It has been suggested that a writ of mandate (Code Civ. Proc., § 1084)[7] would also provide a remedy to compel adoption of a plan by a commission. Section 1085 describes the issuance of a writ of mandate as follows:

"It may be issued by any court, except a municipal or justice court, to any inferior tribunal, corporation, board, or person, to compel the performance of an act which the law specially enjoins, as a duty resulting from an office, trust, or station; or to compel the admission of a party to the use and enjoyment of a right or office to which he is entitled, and from which he is unlawfully precluded by such inferior tribunal, corporation, board or person."

Section 1086 additionally provides:

"The writ must be issued, in all cases where there is not a plain, speedy, and adequate remedy, in the ordinary course of law. It must be issued upon the verified petition of the party beneficially interested."

In 60 Ops.Cal.Atty.Gen. 118 (1977), we suggested that a writ of mandate was an available remedy to compel LAFCOs to adopt spheres of influence:

"As in the case with a deadline for meeting the sphere of influence requirement, the Knox-Nisbet Act is silent with regard to judicial enforcement of that requirement. However, in our view traditional principles of mandamus would apply, giving rise to an action "to compel the performance of an act which the law specifically enjoins, as a duty resulting from an office, trust or station." Code Civ. Proc. § 1085. It has been judicially determined that such a duty includes the duty to exercise discretion where a discretionary duty is involved and the duty not to abuse that discretion in the exercise thereof. See California Civil Writs (Cont. Ed. Bar) § 5.24, pp. 78-79 (1970). Granted, the adoption of a sphere of influence is a legislative act involving the use of discretion with respect to its content. However, while the legislative body may not be required to exercise such discretion in a certain manner, a court can mandate the exercise of discretion or the taking of an action where there has been a demonstrated refusal to act or a failure to recognize that discretion must be exercised. California Civil Writs (Cont. Ed. Bar) §§ 5.29, 5.30 (1970); 32 Cal. Jur. 2d, Mandamus, § 328.

"With respect to citizen suits, it is well established that where a public right is involved and the focus of the mandamus action is to compel the performance or to procure the enforcement of a public duty, the citizen-petitioner need only demonstrate that he is interested in ensuring that the laws are executed and the duty concerned is enforced. He need not show any legal or special interest in the result,

_____

[7]All references hereafter to the Code of Civil Procedure are by section number only.

9.                                                88-307

e.g., Fuller v. San Bernardino Valley Mun. Wat. Dist., 242 Cal.App.2d 52, 56 (1966); Diaz v. Quitoriano, 268 Cal.App.2d 807, 811 (1969). See also Bozung v. Local Agency Formation Com., 13 Cal.3d 263, 272 (1975).

"The Attorney General also has standing to initiate legal action to compel a delinquent LAFCO to adopt spheres of influence. Cal. Const. art. V, § 13; Pierce v. Superior Court, 1 Cal.2d 759, 761-62 (1934)." (Id. at pp. 121-122.)

After the issuance of our 1977 opinion, a petition for a writ of mandate was filed in a superior court seeking to compel a LAFCO to adopt spheres of influence; the trial court denied the petition. (Resource Defense Fund v. Local Agency Formation Com., supra, 138 Cal.App.3d 987, 989.) On appeal, the Court of Appeal also refused to issue the writ; instead, it directed the trial court to enter judgment consistent with the following holding:

"We therefore hold that before a LAFCO may approve a proposal within its jurisdiction, it must develop, determine, adopt, and consider the spheres of influence of each local governmental agency which may include the subject territory in its sphere of influence." (Id. at p. 994.)

This holding is similar to the type of judicial order authorized pursuant to Public Utilities Code section 21679.[8]

As indicated in our prior opinion, courts have often said that a writ of mandate is available to compel the exercise of discretion, though not the exact manner in which the discretion is to be exercised. (See Ballard v. Anderson (1971) 4 Cal.3d 873, 885; Hollman v. Warren (1948) 32 Cal.2d 351, 355; In re Veterans' Industries, Inc. (1970) 8 Cal.App.3d 902, 926; Knoff v. City etc. of San Francisco (1969) 1 Cal.App.3d 184, 197.) Or, in a variation of this principle, the writ will issue to correct an abuse of discretion, where the abuse is the failure to exercise discretion. (See Glendale City Employees' Assn., Inc. v. City of Glendale (1975) 15 Cal.3d 328, 344; Phyle v. Duffy (1949) 34 Cal.2d 144, 153; Hays v. Superior Court (1940) 16 Cal.2d 260, 265-266; Betancourt v. Workmen's Comp.App.Bd. (1971) 16 Cal.App.3d 408, 413.) While these statements appear to be inconsistent with another line of cases requiring a purely ministerial act to be the subject of a writ of mandate (see State Bd. of Equalization v. Watson (1968) 68 Cal.2d 307, 311; Flora Crane Dev., Inc. v. Ross (1964) 61 Cal.2d 199, 203; Frost v. Trustees of Cal. State Univ. & Colleges (1975) 46 Cal.App.3d 225, 229; Hilton v. Board of Supervisors (1970) 7 Cal.App.3d 708, 713; Gong v. City of Fremont (1967) 250 Cal.App.2d 568, 572) and have been the subject of critical commentary (see Moskowitz, Spinning Gold Into Straw: The Ordinary Use of the Extraordinary Writ of Mandamus

---

[8]It is true that the Court of Appeal also stated that "the trial court . . . erred in denying the writ," (Id., at p. 990), but this statement was made without explanation or apparent consideration of the constitutional principles we will discuss below. We believe that the court's actual, directed "remedy" is consistent with all judicial decisions squarely presented with and deciding the issue.

to Review Quasi-Legislative Actions of California Administrative Agencies (1980) 20 Santa Clara L.Rev. 351, 367-371), even if true, an exception exists where the exercise of discretion is the adoption of a legislative act. (See, e.g., Inglin v. Hoppin (1909) 156 Cal. 483, 487.) Under California law, a writ of mandate is unavailable to compel an act that is legislative in nature. Recently in Sklar v. Franchise Tax Board (1986) 185 Cal.App.3d 616, 624-625, the Court of Appeal summarized the applicable constitutional principles:

> "Ten years ago the Supreme Court took note of 'the well-established principle, rooted in the doctrine of separation of powers (Cal. Const., art. III, § 3), that the courts may not order the Legislature or its members to enact or not to enact, or the Governor to sign or not to sign, specific legislation.' (Serrano v. Priest (1976) 18 Cal.3d 728, 751 [fns. omitted].) The court has more recently stated 'that by virtue of the separation of powers doctrine courts lack the power to order the Legislature to pass a prescribed legislative act.' (Mandel v. Myers (1981) 29 Cal.3d 531, 551, fn. 9.) Respect for this fundamental constitutional principle has given rise to the rule that '[m]andamus will not lie to compel a legislative body to perform legislative acts in a particular manner.' (Board of Supervisors v. California Highway Commission (1976) 57 Cal.App.3d 952, 961, accord, e.g., Eller Outdoor Advertising Co. v. Board of Supervisors (1979) 89 Cal.App.3d 76, 82-83; Hicks v. Board of Supervisors (1977) 69 Cal.App.3d 228, 235; Bowles v. Antonetti (1966) 241 Cal.App.2d 283, 286-287; Monarch Cable-vision, Inc. v. City Council (1966) 239 Cal.App.2d 206, 211; Johanson v. City Council (1963) 222 Cal.App.2d 68, 72.) Were it otherwise, courts would be involved in 'an attempt to exercise legislative functions, which . . . is expressly forbidden . . . .' (French v. Senate (1905) 146 Cal. 604, 607.) 'It is elementary that the courts have no such power.' (Tandy v. City of Oakland (1962) 208 Cal.App.2d 609, 611; accord Hilton v. Board of Supervisors (1970) 7 Cal.App.3d 708, 714.)

> "This attitude is especially evident and pronounced in situations where mandamus is sought to overcome legislative inaction. In Myers v. English (1858) 9 Cal. 341, the issue was whether mandamus would issue to compel the State Treasurer to make disbursements for judicial salaries in the absence of an appropriation by the Legislature. The Supreme Court, concluding that it would not, stated: 'It is within the legitimate power of the judiciary, to declare the action of the Legislature unconstitutional, where that action exceeds the limits of the supreme law; but the Courts have no means, and no power, to avoid the effects of non-action. The Legislature being the creative element in the system, its action cannot be quickened by the other departments. Therefore, when the Legislature fails to make an appropriation, we cannot remedy that evil. It is a discretion specially confided by the Constitution to the [Legislature]. . . . We must trust to the good faith and integrity of all the departments. Power must be placed somewhere, and confidence reposed in some one.' (Id., at p. 349 [italics in original]; see California State Employees' Assn. v. State of California (1973) 32 Cal.App.3d 103, 109.)"

In City of Sacramento v. California State Legislature (1986) 187 Cal.App.3d 393, 396-399, the court examined and agreed with these same authorities, noted that "the broader rule is that mandamus will not lie to compel the Legislature to enact any legislation" (id. at p. 397), and concluded:

"A separation of powers does allow for some incidental overlap of function. (E.g., Younger v. Superior Court (1978) 21 Cal.3d 102, 115.)  But a judicially compelled enactment of legislation is not an incidental overlap; it is the very exercise of legislative power itself.  'One branch of the Government cannot encroach on the domain of another without danger.  The safety of our institutions depends in no small degree on a strict observance of this salutary rule.' (Union Pacific R.R. Co. v. United States (1879) 99 U.S. 700, 718.)"  (Id., at p. 399.)

In Hilton v. Board of Supervisors, supra, 7 Cal.App.3d 708, the court rejected the argument that it could compel the rescission of a zoning ordinance:

"Provision for the writ here sought is found in section 1085, Code of Civil Procedure, which declares that it 'may be issued . . . to any . . . board, or person, to compel the performance of an act which the law specifically enjoins, as a duty resulting from an office, trust, or station . . . .'  By the statute's very terms it is thus limited to the enforcement of purely ministerial duties and 'will not lie to control discretion within the area lawfully entrusted to the administrative agency.' (Faulkner v. California Toll Bridge Authority, 40 Cal.2d 317, 326.)  There is no allegation by petitioners, nor could there be, that it was the ministerial duty of respondents to rescind the ordinance here involved, since numerous cases uniformly hold that the enactment of a zoning ordinance is purely a legislative act and a governmental function. (See Johnston v. City of Claremont, 49 Cal.2d 826, 834, Tandy v. City of Oakland, 208 Cal.App.2d 609, 611; Ferris v. City of Alhambra, 189 Cal.App.2d 517, 522; Banville v. County of Los Angeles, 180 Cal.App.2d 563, 567.)  Too, since the passage of a zoning ordinance is a legislative act, it necessarily follows that the vacating of such an enactment (the relief here sought) is likewise legislative in character.  As in Tandy v. City of Oakland, supra, 'the complaint simply asks the court to issue the writ to compel the city council of the defendant city to perform a legislative act. . . .  It is elementary that the courts have no such power.' (Supra, p. 611.)"  (Id. at pp. 713-714.)

As demonstrated in Hilton, the judicial power of section 1085 is lacking regardless of whether the proposed legislative act is at the state level or local level of government.  (See Monarch Cablevision, Inc. v. City Council (1966) 239 Cal.App.2d 206, 210; City Council v. Superior Court (1960) 179 Cal.App.2d 389, 394.)

No reported case has directly held to the contrary.  In Glendale City Employees' Assn., Inc. v. City of Glendale, supra, 15 Cal.3d 328, the Supreme Court cited "5 Witkin, California Procedure (2d ed. 1971) page 3851 and cases there cited" for the defendants' argument "that

12.                                                                                88-307

mandamus will not issue to compel action lying within the scope of agency or official discretion, or to compel performance of a legislative act." (Id. at p. 343.)  The court, however, described the particular writ under consideration as being directed to "non-legislative and ministerial acts." (Id. at p. 344.)  In dictum, it did refer to cases in which 'courts . . . have . . . mandated legislative bodies to enact . . . ordinances" (id. at p. 344, fn. 24), but the cases mentioned (except for one) are readily distinguishable if correctly cited at all.  (See id. at pp. 348-349 (conc. and dis. opn. of Mosk, J.); Note, Enforceability of Memorandum of Understanding Under the Meyers-Milias-Brown Act (1977) 65 Cal.L.Rev. 472, 480, fn. 42.)  In the one exception, Griffin v. Board of Supervisors, supra, 60 Cal.2d 318, the court mandated the redistricting of supervisorial districts, but it did so without any discussion of the separation of powers doctrine or of the specific requirements of section 1085; Griffin has not been cited or followed by the Supreme Court when later presented with similar situations.  (See Legislature v. Reinecke (1973) 10 Cal.3d 396; Legislature v. Reinecke (1972) 7 Cal.3d 92; Legislature v. Reinecke (1972) 6 Cal.3d 595; Silver v. Brown (1965) 63 Cal.2d 270.)

        The adoption of a plan by a commission is clearly a legislative act involving the exercise of judgment and discretion, just as is the adoption of a zoning ordinance, specific plan, or general plan.  (See Yost v. Thomas (1984) 36 Cal.3d 561, 570-571; Wheelright v. County of Marin (1970) 2 Cal.3d 448, 457; Mitchell v. County of Orange (1985) 165 Cal.App.3d 1185, 1191; Hilton v. Board of Supervisors, supra, 7 Cal.App.3d 708, 714, 716-717.)  Accordingly, we conclude that a court would not issue a writ of mandate to compel the adoption of a plan by a commission. Instead, the court would grant remedies available under Public Utilities Code section 21679, such as enjoining any and all development near the airport until a plan is adopted or the equivalent decisions are made accomplishing the specified purposes of a plan.

        In answer to the second question, therefore, we conclude that the only judicial remedies available to compel adoption of a plan by a commission are found in Public Utilities Code section 21679.

* * * * *