[Civ. No. 41651. First Dist., Div. One. Feb. 1, 1979.]

ELLER OUTDOOR ADVERTISING COMPANY OF CALIFORNIA,
Plaintiff and Respondent, v.
BOARD OF SUPERVISORS OF THE CITY AND COUNTY OF SAN
FRANCISCO et al., Defendants and Appellants.

## COUNSEL

George Agnost, City Attorney, and Philip J. Moscone, Deputy City Attorney, for Defendants and Appellants.

Cooper, White & Cooper, R. Barry Churton and Margaret H. Edwards for Plaintiff and Respondent.

## OPINION

**NEWSOM, J.**—The Board of Supervisors of the City and County of San Francisco passed a resolution "calling the attention of the Port Commission to the Adverse Effects of Billboards on Northern Waterfront Property." It did so notwithstanding that section 2.401 of its charter ostensibly forbids any such action.

Eller Outdoor Advertising Company of California (hereinafter respondent), which leases billboard space from the San Francisco Port Commission (hereinafter Port) filed an action to declare the resolution void, and a petition for a writ of mandate commanding the board to rescind it and enjoining individual members of the board from communicating with the Port concerning renewal of respondent's license to use billboard space.

The superior court granted petitioner all of the relief it sought.

On this appeal the board contends, first, that the trial court erred in declaring the resolution null and void as violative of section 2.401, and, second, that mandamus will not lie to force the board to rescind its

resolution. No appeal is taken from the portion of the judgment enjoining appellants from engaging in certain communications with the Port.

We consider these issues in the order of their presentation as follows.

I

The general legislative power of the City and County of San Francisco originates in article XI, sections 5 and 6 of the California Constitution, and is codified in section 2.101 of the San Francisco Charter as follows: "The powers of the city and county, except the powers reserved to the people or delegated to other officials, boards or commissions by this charter, shall be vested in the board of supervisors and shall be exercised as provided in this charter."

Section 2.401 of the same document contains the debated restriction: "Except for the purpose of inquiry, the board of supervisors shall deal with the administrative service for which the chief administrative officer is responsible, solely through such officer, and for administrative or other functions for which elective officials or boards or commissions are responsible, solely through the elective official, the board or commission or the chief executive officer of such board or commission concerned. [¶] *Neither the board of supervisors, nor its committees, nor any of its members shall dictate, suggest or interfere with appointments, promotions, compensations, disciplinary actions, contracts, requisitions for purchases or other administrative recommendations or actions of the chief administrative officer, or of department heads under the chief administrative officer, or under the respective boards and commissions.* The board of supervisors shall deal with administrative matters only in the manner provided by this charter, and any dictation, suggestion or interference herein prohibited on the part of any supervisor shall constitute official misconduct; provided, however, that nothing herein contained shall restrict the power of hearing and inquiry as provided in this charter." (Italics added.)

It is evident that this is not merely a stringent provision for separation of powers within city government, but a rigorous limitation on certain typical functions of a general legislative body as well. And what may seem, seen in one way, a salutary deterrent to the use of political influence, and a guarantee that each city agency shall have plenary and exclusive power to deal with matters under its jurisdiction, when viewed

from another perspective reveals the unusual prospect of a governing body threatened with quasi-criminal sanctions for the mere expression of concern over the manner in which such agencies discharge their duties.

What spectacular feats of municipal corruption gave rise to this Draconian enactment is a matter beyond our concern; however, as noted by our Supreme Court in *Kennedy* v. *Ross* (1946) 28 Cal.2d 569, 577 [170 P.2d 904], " 'It was the definite intention [of the framers] to effectively deprive the Board of Supervisors of all administrative powers.' "

The constitutionality of the ordinance is not directly challenged on this appeal; rather, the principal question before us is the correctness of the trial court's legal conclusion that the resolution violates section 2.401 of the city charter.

## II

The board of supervisors has traditionally expressed public policy in resolutions irrespective of its power to legislate in a given field. It is not uncommon for the board to announce views in matters over which manifestly it has no power of decision, such as, a decade ago, the Vietnam "war." (Cf. *Farley* v. *Healey* (1967) 67 Cal.2d 325 [62 Cal.Rptr. 26, 431 P.2d 650].) ■ We are mindful as well that the public expression of its collective views on matters immediately affecting its constituency, is a traditional and salutary function of the Legislature. Any law derogating from the exercise of such function should accordingly be subject, as appellant asserts, to strict construction. ■ And while it is the usual rule that legislation is presumed to be constitutional (*People* v. *Globe Grain & Mill Co.* (1930) 211 Cal. 121, 127 [294 P. 3]; *In re Madera Irrigation District* (1891) 92 Cal. 296, 307 [28 P. 272]), that presumption is weaker where, as here, the statute arguably inhibits fundamental rights such as free speech. (*L. A. Teachers Union* v. *Los Angeles City Bd. of Education* (1969) 71 Cal.2d 551, 556 [78 Cal.Rptr. 723, 455 P.2d 827].) As a further guide in our interpretation of section 2.401, we are aware that the United States Supreme Court has forbidden the imposition of stricter "free speech" standards on legislators than on the general public. (*Bond* v. *Floyd* (1966) 385 U.S. 116 [17 L.Ed.2d 235, 87 S.Ct. 339].) In Chief Justice Warren's words, "[t]he First Amendment in a representative government requires that legislators be given the widest latitude to express their views on issues of policy." (385 U.S. at p. 136 [17 L.Ed.2d at p. 247].)

III

■ We begin our review on a literal level by stating at once the conclusion that the offending resolution does not, on any fair reading, purport to *dictate* a contract under the Port's jurisdiction. "Dictate" implies command, and there is nothing peremptory in the form or tone of the resolution, which is couched in precatory language. Whether it constitutes an "interference" is a somewhat closer question. The word "dictate" connotes actual intervention or meddling—something stronger than mere advice or recommendation; and while the resolution originally in fact *urged* the Port "to cease approving applications for new billboards . . . and to terminate all existing billboard leases," in final form "urge" was deleted, and the resolution was framed as one *"calling the attention . . . of the Port Commission to* etc." ■ As to its being *suggestive,* however, we have no doubt the resolution in effect constitutes an earnest suggestion that the Port review the wisdom of renewing billboard licenses, including respondent's.

On a semantic level, therefore, we think the resolution undoubtedly *suggests* a course of action and thus appears literally to contravene the terms of section 2.401. "Suggest" is defined (Webster's New Internat. Dict. (2d ed. 1939) p. 2521) in a primary sense as "to put (something) into one's mind; to arouse or awaken, often by indirect means," and the board clearly intended by the resolution to suggest that the commission reassess its billboard policy.

Are we then bound to conclude that the trial court was correct in its implied finding that each member of the board who voted in favor of section 2.401, irrespective of the innocence of his or her intention, was guilty of official misconduct, subjecting such member under Government Code section 25042 to bond forfeiture and possible removal from office? To read the statute in this manner is, we think, to bring its constitutional validity into serious question in the light of *Bond* v. *Floyd, supra,* 385 U.S. 116 [17 L.Ed.2d 235, 87 S.Ct. 339], and related cases. And under established principles of statutory construction we are bound to make every reasonable attempt to construe the provision as constitutionally valid. ■ As our Supreme Court said in *Braxton* v. *Municipal Court* (1973) 10 Cal.3d 138, 145 [109 Cal.Rptr. 897, 514 P.2d 697], "if 'the terms of a statute are by fair and reasonable interpretation capable of a meaning consistent with the requirements of the Constitution, the statute will be given that meaning, rather than another in conflict with the

Constitution.' . . ." (Citing *San Francisco Unified School Dist.* v. *Johnson* (1971) 3 Cal.3d 937, 948 [92 Cal.Rptr. 309, 479 P.2d 669].)

■ With these principles in mind, we read into the word "suggest" a pejorative sense requiring something more than a mere *expression* in public session by a member of the board of his or her view on a matter of public interest, or a collective statement to the same purpose. Quite apart from constitutional infirmities, any other construction would, we fear, lead to absurd results. For example, it would be equally invidious for the board to suggest to the landmarks designation board that a certain public building ought to be designated an historical landmark, or to the redevelopment agency that a neighborhood redevelopment project should be considered in spite of existing leases. Examples could be multiplied in which any comments by the city's Legislature on matters of public interest could arguably be deemed quasi-criminal "suggestions" requiring forfeiture of bond and even of public office.

We thus read the provision in a manner we believe to be fair and reasonable and consonant with the intent of its framers, which we take to be the restraining of board members collectively and in their individual capacities from any actual intervention in the process of awarding public contracts, and not as prohibiting them from public expression concerning matters of civic interest, whether contractual in nature or not.

Without this narrowing construction, the ordinance would be tainted by overbreadth, creating unreasonable restrictions on First Amendment freedoms of San Francisco Supervisors (cf. *Tinker* v. *Des Moines School Dist.* (1969) 393 U.S. 503 [21 L.Ed.2d 731, 89 S.Ct. 733]; *Braxton* v. *Municipal Court, supra,* 10 Cal.3d 138), and discouraging legislative expression on controversial public issues.

## IV

■ Although in the light of the above conclusion it is not necessary to decide whether mandamus lies to compel the performance of the legislative act involved here, i.e., rescission of an earlier adopted resolution, we deem it useful to comment briefly as follows.

All of the cases cited by respondent involve ministerial rather than discretionary acts. Thus, in *Amer. Distl. Co.* v. *City Council, Sausalito* (1950) 34 Cal.2d 660 [212 P.2d 704, 18 A.L.R.2d 1247], the court affirmed

a judgment mandating that the city council terminate annexation proceedings begun by a resolution setting aside an ordinance. The Supreme Court modified the trial court's judgment by striking the declaration that the ordinance was void and should be set aside, stating: "The city council raises the preliminary question of the power of the trial court to enter any judgment at all in this proceeding. The contention is that the judgment operated as an unlawful interference with the exercise of legislative power. Reliance is placed on the general rule, both statutory and decisional, that under the doctrine of separation of powers the courts will not interfere with the legislative process. (Civ. Code, § 3432, subd. 7; Code Civ. Proc., § 526, subd. 7; *Johnston* v. *Board of Supervisors,* 31 Cal.2d 66 . . .; *Berkeley High School Dist.* v. *Coit,* 7 Cal.2d 132 . . . ; *Nickerson* v. *San Bernardino County,* 179 Cal. 518 . . .; *Glide* v. *Superior Court,* 147 Cal. 21 . . . .) On the other hand the petitioner invokes certain recognized exceptions applicable to municipal and other inferior legislative bodies (see *Spring Valley Water Works* v. *San Francisco,* 82 Cal. 286 . . .; *Inglin* v. *Hoppin,* 156 Cal. 483 . . .; *San Christina Inv. Co.* v. *San Francisco,* 167 Cal. 762 . . . ; and see *Berkeley High School Dist.* v. *Coit, supra,* 7 Cal.2d at p. 137). It is deemed unnecessary to consider this problem. The contention of the city council assumes that it had authority to exercise a legislative function under the statute and the facts of this case. The undisputed facts and the statutory provisions require a holding that the city council had only the power and duty to terminate the annexation proceedings." (34 Cal.2d at p. 664.)

Here, we think rescinding the resolution is a legislative act beyond the court's power to command, and therefore violative of the doctrine of separation of powers. (*Monarch Cablevision, Inc.* v. *City Council* (1966) 239 Cal.App.2d 206 [48 Cal.Rptr. 550]; *Board of Supervisors* v. *California Highway Commission* (1976) 57 Cal.App.3d 952, 961-962 [129 Cal.Rptr. 504].)

The judgment is reversed.

Racanelli, P. J., and Elkington, J., concurred.

A petition for a rehearing was denied March 2, 1979.