**AIR CAL, INC.; Air Canada; Alaska Airlines, Inc.; American Airlines, Inc.; Braniff, Inc.; Canadian Pacific Air Lines, Limited; Continental Air Lines, Inc.; Delta Air Lines, Inc.; Eastern Airlines, Inc.; Evergreen International Air Lines, Inc.; Frontier Airlines, Inc.; Northwest Airlines, Inc.; Pacific Southwest Airlines, Inc.; Pan American World Airways, Inc.; Piedmont Aviation, Inc.; Purolator Courier, Inc.; Republic Airlines, Inc.; Trans World Airlines, Inc.; United Air Lines, Inc.; USAIR, Inc.; and Western Air Lines, Inc., Plaintiffs,**

v.

**CITY AND COUNTY OF SAN FRANCISCO, a municipal corporation; the Airports Commission of the City and County of San Francisco; and the Civil Service Commission of the City and County of San Francisco, Defendants.**

and

**San Mateo Central Labor Council; San Francisco Labor Council; SFO Airport Labor Coalition; SEIU Local 87, AFL–CIO; and SEIU Local 77, AFL–CIO, Intervenors-Defendants.**

No. C–85–1402–CAL.

United States District Court,
N.D. California.

June 6, 1986.

Thomas A. Welch, James L. Meeder and Gabrielle M. Wirth, Brobeck, Phleger & Harrison, San Francisco, Cal., for plaintiffs.

George Agnost, City Atty., Burk E. Delventhal and Judith A. Boyajian, Deputy City Attys., San Francisco, Cal., for defendants.

Steward Weinberg, Van Bourg, Weinberg, Roger & Rosenfeld and Kenneth N. Silbert, Beeson, Tayer & Silbert, San Francisco, Cal., for intervenors-defendants.

## OPINION AND ORDER FOR SUMMARY JUDGMENT

LEGGE, District Judge.

Plaintiffs are airlines which conduct air transportation business at the San Francisco International Airport, which airport is owned by defendant the City and County of San Francisco. Plaintiffs conduct their business under lease and use agreements entered into between plaintiffs and the City's Airports Commission. Subsequent to the execution of those agreements, the City enacted an ordinance which in essence requires the airlines to pay a "prevailing rate of wage" to their employees and service providers.

Plaintiffs bring this action challenging the validity of that ordinance on several grounds. The parties have joined issue, by cross motions for summary judgment, on several of the alleged grounds of invalidity. The parties agree, and the court concurs, that there are no genuine issues of material fact with respect to those issues.

For the reasons discussed below, the court concludes that the ordinance is invalid as applied to plaintiffs, because it is contrary to the existing lease and use agreements between plaintiffs and the City. Summary judgment is to be entered in favor of plaintiffs and against defendants.

## I.

In 1981 fifteen of the plaintiffs entered into lease and use agreements with the Airports Commission, a part of the executive branch of the City government. The other plaintiffs are beneficiaries of, and subject to, those lease and use agreements as sublessees from those fifteen plaintiffs. All of the plaintiffs are therefore either parties to a lease and use agreement or third-party beneficiaries of such an agreement.

## II.

In 1984, while the agreements were still in effect, the City's Board of Supervisors, the legislative branch of the City government, adopted Ordinance 140–84. That ordinance applies specifically to the San Francisco International Airport. And in section 6.1–3, the ordinance is made applicable to every agreement between the Airports Commission and any party engaging in any activities, services, or exercises of privileges at the airport.

The operative language of the ordinance is the following:

This ordinance *shall obligate the contracting party [the airlines] to pay not less than the prevailing rate of wage* to any person performing personal services ... on property under the jurisdiction of the San Francisco Airports Commission and shall further require the ... [airlines] to include a similar provision in all subcontracts, subleases or other subordinate agreements let, awarded, negotiated or entered into by ... [the airlines] with any third person which involves personal services to be performed on property under the jurisdiction of the San Francisco Airports Commission.

San Francisco, Ca., Admin.Code ch. 6, § 6.1–3 (1984) (emphasis added).

The ordinance defines the term "prevailing rate of wage" and prescribes procedures for making the determination. *Id.* § 6.1–3(a), (b). The ordinance contains penalties for its violation. *Id.* § 6.1–2(d), (e). The ordinance is expressly made applicable to existing contracts and subcontracts at the airport, "[t]o the extent permitted by law" and "to the extent those contracts are expressly subject to the application of lawful ordinances enacted after the date the contracts were executed." *Id.* § 6.1–3(g).[1]

The City's passing of the ordinance could only be an exercise of the City's proprietary powers as the owner of the airport. The ordinance was not an exercise of the City's police powers, because the airport is located in the County of San Mateo and is outside of the police power jurisdiction of the City. The distinction between police and proprietary powers becomes important for reasons discussed below.

### III.

The Airports Commission communicated with the plaintiffs and advised them of the enactment of the ordinance, their obligations under it, and the penalties.

Plaintiffs then filed this suit challenging the ordinance. The challenge consists of several claims set forth in the complaint, and plaintiffs seek a declaratory judgment that the ordinance is invalid, void, unenforceable, and inapplicable to plaintiffs' agreements with the City.

The complaint was initially against the City defendants only, but the court subsequently granted the motion of certain labor organizations to intervene as party defendants.

The parties then filed cross motions for summary judgment. The effect of those cross motions was to join issued on some, but not all, of plaintiffs' challenges to the ordinance. The issues now presented to the court in these motions are whether the ordinance:

(1) is invalid under the San Francisco City Charter;

(2) violates the lease and use agreements between plaintiffs and the City;

(3) is preempted by state law; and

(4) is preempted by various federal statutes and regulations.

The issue of the constitutionality of the ordinance was raised in the pleadings, but is not now before the court on these motions for summary judgment.

The court finds, and the parties have agreed, that there are no genuine issues of material fact as to the issues raised in the present cross motions for summary judgment. The court here decides that the ordinance violates the lease and use agreements entered into between plaintiffs and the City. It is therefore not necessary for the court to address, other than as a part of that decision, the other issues raised in the motions for summary judgment or in the plaintiffs' complaint.

### IV.

This court has jurisdiction under 28 U.S.C. § 1331, since plaintiffs challenge the validity of the ordinance under the United States Constitution and various laws and regulations of the United States. Although the court does not grant summary judgment on one of those federal grounds, the court nevertheless has jurisdiction and can adjudicate the state law claims. *Hillery v. Rushen,* 720 F.2d 1132, 1140 (9th Cir.1983) ("The judicial power over state-law issues is properly exercised even if resolution of the state-law issues obviates the need to address the federal issues.").

Defendants contend that plaintiffs have failed to state a case or controversy, citing *Allen v. Wright,* 468 U.S. 737, 104 S.Ct. 3315, 82 L.Ed.2d 556 (1984). Defend-

---

1. The City argues that the ordinance was intended to cover only employees who were *not* covered by collective bargaining agreements. That intent does not appear from the face of the ordinance, which appears to cover all employees. Because that distinction is not important to the court's decision here, the court expresses no comment on that argument, other than to note that the issue has apparently been raised by the City in state court proceedings.

ants argue that there is no case or controversy until the ordinance is actually enforced against a plaintiff. However, the court concludes that there is a present case or controversy. The ordinance expressly governs the airport and is directed at the plaintiffs' operations at the airport. The plaintiffs employ persons, and contract for services by persons, who are the subjects of the language of the ordinance. It imposes duties upon plaintiffs and penalties for failure to comply. It is expressly applicable to the existing agreements between plaintiffs and the Airports Commission. The Airports Commission has advised the plaintiffs that the ordinance is applicable to them and that there are penalties. And references to the ordinance are included in newly issued permits between the City and the plaintiffs. These elements are sufficient to establish the existence of a case or controversy. *Seattle School District Number 1 v. State of Washington*, 633 F.2d 1338, 1342 n. 1 (9th Cir.1980), *aff'd*, 458 U.S. 457, 102 S.Ct. 3187, 73 L.Ed.2d 896 (1982). *See also Trans World Airlines, Inc. v. City and County of San Francisco*, 228 F.2d 473 (9th Cir.1955) (exercising jurisdiction on similar facts without questioning existence of case or controversy), *cert. denied.* 351 U.S. 919, 76 S.Ct. 711, 100 L.Ed. 1451 (1956).

### V.

■ As stated, in 1981 the plaintiffs entered into lease and use agreements with the City which are in effect for thirty-three years. Plaintiffs contend that the ordinance violates those agreements. Or stated another way, plaintiffs contend that by entering into those agreements the City contracted away the right of the Board of Supervisors to pass such an ordinance dealing with terms and conditions set forth in the agreements. Defendants contend that the rights and powers granted to the airlines under those agreements were expressly subject to later legislative enactments not inconsistent with those agreements, and that the agreements provide that the airlines will not do anything which conflicts with later ordinances. The inter-

pretation of the agreements, and their relationship to the later ordinance, pose issues of contract interpretation and of law which can be resolved by this court on summary judgment. *United States v. Contra Costa County Water District*, 678 F.2d 90, 91 (9th Cir.1982); *Castaneda v. Dura-Vent Corp.*, 648 F.2d 612, 619 (9th Cir.1981).

Under the agreements, the City granted to plaintiffs the right to use the airport and its facilities for their air transportation business. Lease and Use Agreement, art. II, § 201. In addition, the City granted the airlines permission to perform such operations and functions as are additionally necessary and proper to the conduct of that business. The specifically enumerated powers granted to the airlines include the hiring of airline personnel and personnel of the airlines' contractors. *Id.* § 201(D). The enumerated powers also include the "purchase or other acquisition of services ... of any nature" which are deemed by the airlines to be required by, or incidental to, their operations. *Id.* § 201(N). Section 1101(a) also provides that the Airports Commission cannot add any charges, fees or tolls, directly or indirectly against the airlines, their furnishers of services or, their suppliers. *Id.* art. XI, § 1101(a).

Taken together, those sections of the agreements vest in the airlines the right and power to contract for services on such terms and conditions as the airlines deem proper, unregulated by the City or its Airports Commission. Such grants of rights and powers are inconsistent with a later requirement that specific wages must be paid to specific employees by the airlines and their contractors.

This interpretation was adopted in an opinion of the City Attorney in 1982 regarding whether the Airports Commission could require that a prevailing wage rate be paid by the airlines. The opinion analyzed the agreements, quoted their provisions, and said:

This provision clearly preserves to each airline which has entered into the Lease and Use Agreement *the freedom*

*to contract with its suppliers of services on any terms which are mutually agreeable to the airline and its contractor.* Therefore, under the terms of the Lease and Use Agreement, the Airports Commission *may not require that an airline include a prevailing wage provision in its contract for services.*

Letter from Donald J. Garibaldi, Airports General Counsel, to L.A. Turpen (December 1, 1982) (emphasis added).

Defendants argue that this opinion pertained to the City's Airports Commission, and not to the City's Board of Supervisors. However, the basis for the opinion was not which branch of the city government sought to enact the prevailing wage provision, but that as a matter of contract the airlines were given the right to agree on any terms which are mutually agreeable to it and its suppliers.[2]

Later, the City Attorney appeared to change his opinion, in a letter of February 17, 1984, regarding the enactment of this ordinance. Letter from Burk E. Delventhal, Deputy City Attorney, to John L. Taylor, Clerk of the Board of Supervisors (Feb. 17, 1984). However, that opinion did not discuss the language of the lease and use agreements which vest the rights and powers in the airlines. Rather, the letter emphasized sections of the agreements pertaining to later-enacted ordinances or regulations.[3]

The court now considers that interpretation, which is in essence the City's argument in answer to the contractual grants of rights and powers to the airlines discussed above. The City argues that sections 905 and 1001 of the lease and use agreements require the airlines to be bound by subsequently enacted legislation of the Board of Supervisors, unless those later enactments are related to the formulas for rental and landing fees and capital improvements.

This court does not so interpret the agreements.

Section 905 provides that an airline shall not do anything on the premises which will conflict with any law, ordinance, rule or regulation later enacted by any public authority having jurisdiction. Lease and Use Agreement, art. IX, § 905(b). However, this ordinance was not promulgated by the "public authority having jurisdiction." This ordinance was passed by the Board of Supervisors, the *legislative* branch of the City. But the City has previously vested jurisdiction over the operation of the airport in the Airports Commission, an *executive* department of the City. In Article III Chapter 5, and part 20, the City Charter defines the powers and duties of the Airport Commission, and in section 3.691 vests in the Commission all of the powers and duties of the management and control of the airport. City and County of San Francisco Charter, art. III, ch. 5, pt. 20, § 3.691. It states that the *Commission* "shall have power to fix, change and adjust rates and charges for the furnishing of services." Article II of the Charter, dealing with legislative powers, provides in section 2.101 that the Board of Supervisors may *not* exercise powers which have been specifically delegated to other commissions. And in section 2.401, the City Charter provides that the Board of Supervisors shall not interfere in actions of the City's commissions. *Id.* art. II, ch. 1, § 2.101; *id.* art. II, ch. 4 § 2.401. The City has therefore vested in its Airports Commission, and not in its Board of Supervisors, the proprietary powers of the City over the airport. The vesting of power over the airport in the Airports Commission has been noted by the California courts in *City and County of San Francisco v. Western Airlines*, 204 Cal.App.2d 105, 132, 22 Cal.Rptr. 216, 233 (1962), *cert. denied*, 371 U.S. 953, 83 S.Ct. 502, 9 L.Ed.2d 502 (1963). (The body referred to in that opinion was the Public

---

**2.** This opinion was again affirmed to the Airports Commission in its March 1, 1983, meeting. *See* Director's Report, Minutes of Meeting of the Airports Commission of the City and County of San Francisco 5, 6, 7 (March 1, 1983).

**3.** The ordinance contains such provisions in paragraph 6.1–3(g).

Utilities Commission; its powers were subsequently transferred to the Airport Commission.) And the Board of Supervisors could not exercise police powers over the airport, since it is located in another county.

Section 1001 of the agreements, which is referred to in section 905, further subjects the airlines to reasonable rules and regulations which are "not inconsistent with the provisions of this Agreement." Lease and Use Agreement, art. X, § 1001. But granting to the airlines the right and power to enter into their own economic agreements, and then later requiring that those agreements be at a prevailing wage rate defined by the Board of Supervisors, is indeed inconsistent. And section 1001, by its express language, subjects the airlines to later changes by the Airports Commission, not by the Board of Supervisors.

In essence, the City argues that sections 905 and 1001 of the agreements retain to the City the unilateral right to change important provisions of the agreements, simply by passing later ordinances and justifying them as regulation contemplated by the agreements. But if such a later regulation *changes* express rights and power which have already been granted, that is more than regulation. It is unilateral change. While the City may retain some powers, primarily through its Airports Commission, to pass some new rules and regulations to which the airlines might be subject, the City may not change the material terms of the agreements which the City has made with the airlines.

In addition, by entering into the agreements the Airports Commission exercised the powers vested in it by the City Charter to regulate the airport. That exercise of power by the executive branch of the City exhausted the proprietary powers of the City regarding the matters set forth in the agreements. And the City's legislative branch, the Board of Supervisors, has no police powers over the airport.

In summary, the lease and use agreements grant to the airlines the right to contract, on such terms as are mutually agreeable between them and their employees and contractors, on the rates to be paid for the acquisition of labor and other services. The later ordinance attempts to make a material modification to those agreements by altering those contractual rights. It cannot be justified on the basis that the ordinance is simply a form of regulation which was contemplated by the agreements.

The above conclusions are supported by other judicial decisions, including a decision of this circuit. Two cases have held that when a city exercises proprietary powers over an airport and contracts with an airline or the operators of the airport, it has contracted away its power to control matters which are included in those contracts. And the City is bound by its contracts. *Trans World Airlines v. City and County of San Francisco*, 228 F.2d 473 (9th Cir. 1955). In that case, the court stated that the question for decision was:

> [W]hether or not the City and County of San Francisco, having contracted through its duly authorized officials to permit Trans World Airlines, Inc. to use 'common use facilities' at the San Francisco International Airport, situated in San Mateo County, at fixed rates for a term of years, may thereafter, through its duly constituted ... [Airports Commission] change the contract rates.

*Id.* at 474.

The court concluded that insofar as a later resolution of the commission "purported to abrogate the rates and charges fixed by the 1942 contract the resolution was void." *Id.* at 478. And in *Pirolo v. City of Clearwater*, 711 F.2d 1006 (11th Cir.1983), the court held that where a city, the owner of the airport, had yielded by contract the right to regulate certain matters under its proprietary powers, it had contracted away its rights to impose other restrictions. *Id.* at 1010.

## VI.

IT IS THEREFORE ORDERED that plaintiffs' motion for summary judgment is

granted and defendants' motion for summary judgment is denied. Judgment will be entered in favor of plaintiffs and against defendants, declaring that Ordinance No. 140–84 of the City and County of San Francisco cannot apply to the lease and use agreements between the City and plaintiffs.

Within twenty (20) days of the date of this opinion and order, plaintiffs are to submit to the court a proposed form of judgment consistent with this opinion. The form of judgment is first to be submitted to defendants for approval as to form. In absence of an agreement as to form, the court will determine the form of the judgment to be entered.