865 F.2d 1112
 111 Lab.Cas. P 56,050
 AIR CAL, INC.; Air Canada; Alaska Airlines, Inc.;
American Airlines, Inc.; Braniff, Inc.; Canadian Pacific
Air Lines, Inc.; Continental Air Lines, Inc.; Delta Air
Lines, Inc.; Eastern Airlines, Inc.; Evergreen
International Air Lines, Inc.; Frontier Airlines, Inc.;
Northwest Airlines, Inc.; Pacific Southwest Airlines, Inc.;
Pan American World Airways, Inc.; Piedmont Aviation, Inc.;
World Airlines, Inc.; United Air Lines, Inc.; USAir, Inc.;
and Western Air Lines, Inc., Plaintiffs-Appellees,
CITY AND COUNTY OF SAN FRANCISCO, a municipal corporation;
the Airports Commission of the City and County of San
Francisco; Civil Service Commission of the City and County
of San Francisco, Defendants-Appellants,
San Mateo Central Labor Council; SFO Airport Labor
Coalition, Defendant- Intervenors-Appellants,
and
San Francisco Labor Council; SEIU Local 87; SEIU Local 77,
Defendants- Intervenors.
 Nos. 86-2520, 86-2530.
 United States Court of Appeals,
Ninth Circuit.
 Argued and Submitted Dec. 15, 1987.
Decided Jan. 17, 1989.
 
 Louise H. Renne, City Atty., Burk E. Delventhal and Judith A. Boyajian, Deputy City Attys., San Francisco, Cal., for defendants-appellants.
 James L. Meeder, Brobeck, Phleger & Harrison, Los Angeles, Cal., and Philip R. Diamond, Bickel & Diamond, San Francisco, Cal., for plaintiffs-appellees.
 Marie M. Rongone, Beeson, Tayer, Silbert & Bodine, San Francisco, Cal., for defendants-intervenors-appellants.
 Appeal from the United States District Court for the Northern District of California.
 Before TANG, CANBY and BRUNETTI, Circuit Judges.
 TANG, Circuit Judge:
 
 
 1
 The City and County of San Francisco (the City), along with the San Mateo Central Labor Council and the San Francisco Airport Labor Coalition (labor organizations) as intervenors, appeal the district court's grant of summary judgment in favor of Air Cal, Inc. and nineteen other airlines (Airlines). At issue is a San Francisco city ordinance which requires most airport contractors, lessees, franchisees and others, to pay not less than the "prevailing rate of wage" to any person performing personal services on San Francisco Airport property. The district court concluded that the ordinance was invalid as applied to the Airlines because it contravened existing lease and use agreements between the Airlines and the City. We affirm.
 
 BACKGROUND
 
 2
 On April 9, 1984 the San Francisco Board of Supervisors passed Ordinance No. 140-84 (the ordinance) amending Chapter 6 of the City's Administrative Code. The ordinance requires most City contractors "to pay not less than the prevailing rate of wage to any person performing personal services ... on property under the jurisdiction of the San Francisco Airports Commission." San Francisco, Cal., Admin.Code Sec. 6.1-3 (1984). The "prevailing rate of wage" is defined as "that rate of compensation being paid to a majority of workers engaged in a specified category of personal services" as determined by the Civil Service Commission.[1] Id. The introductory findings to the ordinance indicate it was designed to promote the "safe and efficient operation" of the Airport in the wake of a series of labor disputes relating to the practice of subcontracting out the performance of certain personal services. Ordinance Sec. 1, Findings (7)-(10).
 
 
 3
 The ordinance sets out a complaint and hearing procedure for determining whether there has been a violation of the prevailing rate of wage and also provides a penalty scheme for its violation. Id. Sec. 6.1-3(b), (c), (d), (d), (e). Finally, the ordinance is expressly made applicable to
 
 
 4
 all existing contracts, with or on behalf of the City and County of San Francisco subject to the jurisdiction of the San Francisco Airports Commission, and to all subcontracts existing pursuant thereto, to the extent those contracts are expressly subject to the application of lawful ordinances enacted after the date the contracts were executed.
 
 
 5
 Sec. 6.1-3(g) (emphasis added).
 
 
 6
 In July 1981, the Airlines entered into 30-year lease and use agreements (agreements) with the San Francisco Airports Commission. Following the enactment of the ordinance, the Airlines on February 7, 1985 filed suit in district court seeking declaratory and injunctive relief. The Airlines argued, inter alia, that the ordinance: (1) was invalid under the San Francisco City Charter; (2) violated the lease and use agreements; (3) was preempted by state law; and (4) was preempted by various federal statutes and regulations. The district court granted summary judgment for the Airlines on June 6, 1986. The court concluded that the ordinance was invalid as applied to the Airlines because it contravened the existing 30-year lease and use agreements between the Airlines and the City. Air Cal, Inc. v. City and Cty. of San Francisco, 638 F.Supp. 659 (N.D.Cal.1986). The City's motion for reconsideration was denied on July 29, 1986. The court entered judgment for the Airlines on July 30, 1986, decreeing the ordinance "invalid as applied to the lease and use agreements" and permanently enjoining the City from the application or enforcement of the ordinance "so long as the lease and use agreements are in effect." The City and intervenors timely appeal.
 
 JURISDICTION AND STANDARD OF REVIEW
 
 7
 The district court exercised federal question jurisdiction over the federal constitutional and federal statutory preemption claims raised by the Airlines under 28 U.S.C. Sec. 1331 (1982), and exercised pendent jurisdiction over the related California law claims. United Mine Workers of America v. Gibbs, 383 U.S. 715, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966). Jurisdiction over the state law issues was properly exercised even though resolution of the state claims obviated the need to address the federal issues. Hillery v. Rushen, 720 F.2d 1132, 1140 (9th Cir.1983). We have jurisdiction under 28 U.S.C. Sec. 1291 (1982).
 
 
 8
 The district court's grant of summary judgment and its interpretation of state law are both reviewed de novo. Jewel Companies, Inc. v. Pay Less Drug Stores Northwest, Inc., 741 F.2d 1555, 1559-60 (9th Cir.1984); Matter of McLinn, 739 F.2d 1395, 1397 (9th Cir.1984) (en banc).
 
 DISCUSSION
 
 9
 Resolution of this appeal requires consideration of several provisions of the lease and use agreements entered into between the Airlines and the City, as well as reference to the Charter of the City and County of San Francisco. We are guided and governed by at least one case of this circuit, Trans World Airlines, Inc. v. City and County of San Francisco, 228 F.2d 473 (9th Cir.1955), cert. denied, 351 U.S. 919, 76 S.Ct. 711, 100 L.Ed. 1451 (1956), and informed by the opinion of the court below. Air Cal, 638 F.Supp. 659 (N.D.Cal.1986). At the outset, we note the somewhat unusual jurisdictional consequences arising from the airport's location in the County of San Mateo, outside of the City's limits and thus, beyond its police power jurisdiction. We conclude that the City's prevailing wage ordinance is invalid as applied to the Airlines because the ordinance is at least impliedly inconsistent with the lease agreement, and further, because the City, by charter, has vested its limited proprietary powers over the airport in the Airports Commission, and may not subsequently interfere with particular agreements entered into by its executive commission.
 
 A. Section 201 of the Agreement
 
 10
 Briefly, we consider first whether the ordinance is invalid as applied to the Airlines because it conflicts with rights conferred in the lease and use agreements signed in July 1981. The lease agreements generally permit the Airlines "to perform such operations and functions as are incidental, necessary or proper to the conduct of their air transportation business." Lease and Use Agreement, art. II, Sec. 201. The agreements specifically enumerate certain permissible uses of the airport, including the following:
 
 
 11
 The hiring and training on the Airport of personnel in the employ of or to be employed by Airlines ... or Airline's contractors ... Id., Sec. 201(D).
 
 
 12
 * * *
 
 
 13
 * * *
 
 
 14
 The purchase or other acquisition of services or personal property of any nature ... deemed by it to be required by, or incidental to, Airline's operations ... consistent with Section 1001 of this Agreement. Id., Sec. 201(N).
 
 
 15
 Section 1001 of the agreement provides that:
 
 
 16
 The use by Airline of the areas and facilities described in Article II of this Agreement and the rights therein conferred upon Airline shall be subject to such reasonable rules and regulations, not inconsistent with the provisions of this Agreement, as are now or may hereafter be prescribed by Commission. Id., art. X, Sec. 1001.
 
 
 17
 The district court concluded that taken together, these sections of the agreements "vest in the airlines the right and power to contract for services on such terms and conditions as the airlines deem proper," and thus, that the agreement was inconsistent with the later ordinance. Air Cal., 638 F.Supp. at 662. The City argues the agreements and ordinance are not necessarily in conflict because the Airlines can pay prevailing wages without giving up their rights to "hire and train" employees (Agreement, Sec. 201(D)) and to purchase fuel, food and the other goods and services (Id., Sec. 201(N)) required to operate their business. The Airlines respond that the agreements' use of the term "hiring" in Sec. 201(D) includes the power to agree with employees upon compensation. Additionally, the Airlines argue that where labor costs are 30% or more of their total operating costs, control of labor costs is indeed "incidental, necessary [and] proper" to the conduct of their business.
 
 
 18
 We do not find the ordinance and the agreement expressly and inherently inconsistent. The Airlines' right under the agreement "to hire and train" personnel does not expressly guarantee the payment of any rate of wage or compensation; nor does the ordinance necessarily abrogate the Airlines' right to select and utilize their employees or otherwise secure services. We agree, nonetheless, that the ordinary meaning of the term "to hire" commonly includes both a "selection" and "payment" component. See, e.g., Webster's New Collegiate Dictionary (1977) (defining the verb "hire" as "to engage the personal services of [another] for a set sum"). Thus, the "hiring" language of the agreements suggests that the Airlines were granted at least an implied right to select employees and to negotiate as to their rates of compensation.
 
 
 19
 This interpretation is reinforced by the statements of San Francisco's own City Attorney in 1982, over two years prior to the onset of this litigation. In construing Sec. 201(N) of the agreements ("the power to purchase ... services ... of any nature"), the City Attorney expressed the opinion that:
 
 
 20
 This provision clearly preserves to each airline which has entered into the Lease and Use Agreement the freedom to contract with its suppliers of services on any terms which are mutually agreeable to the airline and its contractor. Therefore, under the terms of the Lease and Use Agreement, the Airports Commission may not require that an airline include a prevailing wage provision in its contract for services.
 
 
 21
 Letter from Donald J. Garibaldi, Airports General Counsel, to L.A. Turpen, Director of Airports (December 1, 1982). The City's contention that the letter merely expresses an opinion on the scope of the power of the Airports Commission is incomplete. The letter also indicates the understanding that as a matter of contract, the Airlines were given the right to agree on terms which are mutually agreeable to it and its suppliers of services.
 
 
 22
 In Trans World Airlines (TWA) v. City and County of San Francisco, 228 F.2d 473 (9th Cir.1955), an early and leading case construing the City's relationship with its airport, we recognized the Commission's authority to enter into such contracts and affirmed their binding effect. TWA held that the City, having contracted through its duly authorized officials to permit TWA to use "common use facilities" at the airport at fixed rates for a term of years, could not thereafter, through its duly constituted Public Utilities Commission [the predecessor of the Airport Commission], change the contract rates. We concluded that by electing to proceed by contract as opposed to regulation, the City had bound itself to the rates and charges negotiated; insofar as a subsequent resolution of the commission purported to abrogate the rates and charges fixed by the earlier contract, the resolution was void. TWA, 228 F.2d at 476-78. See also, Pirolo v. City of Clearwater, 711 F.2d 1006, 1010 (11th Cir.1983) (finding City noise control ordinance inapplicable to airport operator with whom City by approving a sublease, had "contracted away the right to impose the noise restrictions").
 
 
 23
 The City seeks to distinguish TWA and Pirolo first on the grounds that those cases involved attempts to abrogate "express rights" granted in the leases, whereas in the instant case, the City's prevailing wage rate ordinance purportedly does not annul any rights (express or implied) granted to the Airlines. Somewhat more persuasively, the City asserts that in neither TWA nor Pirolo did the lease agreement explicitly reserve the future exercise of lawmaking or regulatory powers. Indeed, the City candidly acknowledges that the reason for including Sec. 905(b) of the lease agreements "was to avoid the effect of the 25-year old TWA decision." Appellant's Reply Brief at 9.
 
 
 24
 Despite the City's efforts to distinguish TWA, the decision still retains some force. As we have indicated, the prevailing wage ordinance is at least impliedly inconsistent with rights granted to the Airlines in the lease agreements; thus, contrary to the City's assertion, rights of the Airlines' are implicated. Nor can the City succeed by an "express reservation" of rights contained in a lease agreement, to enhance its already circumscribed authority over the airport, in order to overcome a contractual agreement signed by its designated agent, the Airports Commission. As TWA makes clear and the district court recognized, "the City is bound by its contracts." Air Cal, 638 F.Supp. at 664.
 
 
 25
 Nonetheless, the City argues that even if there is any inconsistency, express or implied, between the rights granted in Sec. 201 of the agreement and the requirements of the ordinance, the City's "express reservation" of rights in Sec. 905(b) of the agreement prevails. To this argument, which forms the crux of the City's case, we now turn.
 
 B. Section 905(b) of the Agreement
 Section 905(b) of the agreement provides:
 
 26
 Airline shall not do or cause or permit anything to be done ... which will in any way ... conflict with any law, ordinance, rule or regulation now in effect or which may hereafter be enacted or promulgated by any public authority having jurisdiction. Agreement, art. IX, Sec. 905(b).
 
 
 27
 In effect, the validity and application of the ordinance must be weighed against both Sec. 201 of the agreement, which grants the Airlines certain rights, express and implied, and Sec. 905(b), which seeks to reserve certain rights to the City. Our understanding of Sec. 905(b), particularly the phrase "public authority having jurisdiction," is necessarily informed by the San Francisco City Charter. The district court concluded that the ordinance, enacted by the San Francisco Board of Supervisors (the Board), was not promulgated by a "public authority having jurisdiction"; rather, the trial court found that under the City Charter, jurisdiction over airport operations was vested in the Airports Commission. Air Cal, 638 F.Supp. at 663. With much of this analysis, we agree.
 
 1. Municipal Powers and Functions
 
 28
 The San Francisco International Airport is owned by the City and County of San Francisco. Thus it is clear, and the parties agree, that the City as owner exercises certain proprietary powers over the airport. The California courts have recognized and affirmed this proprietary capacity, see City and County of San Francisco v. Western Air Lines, Inc., 204 Cal.App.2d 105, 132, 22 Cal.Rptr. 216, 233 (1962), cert. denied, 371 U.S. 953, 83 S.Ct. 502, 9 L.Ed.2d 502 (1963); Coleman v. City of Oakland, 110 Cal.App. 715, 720, 295 P. 59, 61 (1930) (finding that in conduct of airport municipality is acting in a proprietary capacity), and have further classified a municipally owned airport as a public utility. Western Air Lines, 204 Cal.App.2d at 133, 22 Cal.Rptr. at 232-33; Stagg v. Municipal Court of Santa Monica, 2 Cal.App.3d 318, 322, 82 Cal.Rptr. 578, 580 (1969). The proprietary power, as characterized by the courts and commentators, generally encompasses the City's ability as owner to enter into private commercial relationships. See, Reynolds, Local Government Law, Sec. 3 at 12 (1982). It also encompasses the power to regulate use of the property by ordinance, see Santa Monica Airport Ass'n v. City of Santa Monica, 659 F.2d 100 (9th Cir.1981), so long as the city has not chosen to enter contracts for use that are inconsistent with such regulation, Trans World Airlines, 228 F.2d at 477; Pirolo v. City of Clearwater, 711 F.2d 1006, 1010 (11th Cir.1983).
 
 
 29
 The City does not, however, exercise its broader police power jurisdiction over the airport due to the airport's location in San Mateo County, beyond the City's corporate limits. Although a municipality's right to acquire or own property beyond its corporate limits for legitimate municipal purposes is well-established, see, e.g., Baker v. City of Palo Alto, 190 Cal.App.2d 744, 12 Cal.Rptr. 425, 430 (1961), its power to exercise the "rights of sovereignty" over such property is less so. See 10 McQuillin, Municipal Corporations Sec. 28.05 (3d ed. 1981). Under the California Constitution, "[a] county or city may make and enforce within its limits all local, police, sanitary, and other ordinances and regulations not in conflict with general laws." Cal. Const. art. XI, Sec. 7 (emphasis added). Thus, in San Francisco as elsewhere, the police power generally operates only within the municipal area, and cannot be exercised outside the territorial boundaries, at least not without special authorization by charter or statute. See, e.g., Candid Enterprises, Inc. v. Grossmont Union High School District, 39 Cal.3d 878, 885, 218 Cal.Rptr. 303, 309, 705 P.2d 876 (1985); see also, 6A McQuillan, Sec. 24.57 at 169. In this regard, and apart from authorization by charter, statute or the "adjustment of points of difference," see, e.g., Village of Blaine v. Independent School Dist. No. 12, 272 Minn. 343, 138 N.W.2d 32, 34 (1965); 6A McQuillan Sec. 24.57 at 169, San Mateo and not San Francisco exercises police power jurisdiction over the Airport.
 
 
 30
 The City asserts, however, that the Board's authority to enact the ordinance stems from the City's broad "municipal affairs" power, of which the proprietary power is only one component. The City locates this power in Article XI, section 5 of the California Constitution which provides:
 
 
 31
 It shall be competent in any city charter to provide that the city governed thereunder may make and enforce all ordinances and regulations in respect to municipal affairs, subject only to restrictions and limitations provided in their several charters and in respect to other matters they shall be subject to general laws. Cal. Const. art. XI, Sec. 5(a).
 
 
 32
 We do not decide whether the ordinance is a proper exercise of the "municipal affairs" power. Whether or not the prevailing wage ordinance is properly considered an ordinance "in respect to municipal affairs" within the meaning of section 5, a matter on which we express no opinion, its application is in any event subject to "restrictions and limitations" set forth in the City Charter. Cal. Const. art. XI, Sec. 5(a). Here, state statute and city charter are both implicated and engaged; moreover, particular contracts have been entered into pursuant to the authority conferred. Thus, even if the ordinance arguably involves a "municipal affair," we must still consider the effect of charter based restrictions and limitations. To these then, we now turn.
 
 2. City Charter
 
 33
 Under the San Francisco City Charter, "all powers and duties in the management and control" of the airport that previously rested with the public utilities commission are vested in the Airports Commission. City and County of San Francisco Charter, art. III, ch. 5, pt. 20, Sec. 3.691. This authority flowed initially from the State of California, which granted to its local agencies the power to acquire and use real property within or without its territorial confines as a site for an airport. Cal.Gov.Code Secs. 50470 (West 1983). California statute further provides that a local agency may:
 
 
 34
 Lease or assign for operation any space and any necessary or useful appurtenances, appliances, or other conveniences.
 
 
 35
 * * *
 
 
 36
 * * *
 
 
 37
 Regulate the use of the airport and facilities and other property or means of transportation within or over the airport.
 
 
 38
 * * *
 
 
 39
 * * *
 
 
 40
 Enter into contracts or otherwise cooperate with the Federal Government or other public or private agencies.
 
 
 41
 * * *
 
 
 42
 * * *
 
 
 43
 Exercise powers necessary or convenient in the promotion of aeronautics and commerce and navigation by air.
 
 
 44
 Cal.Govt.Code Sec. 50474(c), (f), (h), (i) (West 1983).
 
 
 45
 The City in turn, by its Charter, expressly placed in the Airports Commission the powers granted by the State. Charter, Sec. 3.691. Specifically, section 3.691 provides that the Airports Commission "shall have possession, management, supervision, operation and control" of all airport property; the power "to purchase, lease or otherwise acquire all such lands, property, improvements or related facilities"; and the power "to fix, change and adjust rates and charges for the furnishing of services." Charter Sec. 3.691.
 
 
 46
 The City contends that the district court erroneously concluded that by delegating the responsibility for managing and operating the Airport to a City Commission, the San Francisco voters "stripped the Board of its policy and rule-making powers." Appellant's Opening Brief (AOB) at 18. No such calamity is in the making. It is true that the Board of Supervisors, as the legislative branch of the City, is generally empowered to exercise its policy-making judgment and discretion on matters of municipal concern. Charter Sec. 2.101. However, where the powers of the City and County have been expressly delegated to other officials, boards or commissions by the Charter itself, the Board's powers are necessarily restricted. Charter Sec. 2.101; 2.401. Here, although the Board probably could not have delegated all of its police or law-making power to the Commission, it certainly had power to delegate its more limited proprietary powers of regulation to the Commission, and clearly did so in this case. See Western Air Lines, 204 Cal.App.2d at 132, 22 Cal.Rptr. at 233 (finding airport is placed by charter under the jurisdiction of City's Public Utilities Commission). Having properly delegated this function to the Commission, the Board was not free to regulate the parties contracting with the Commission in the manner that it did.
 
 Charter Sec. 2.401 provides in part:
 
 47
 Neither the board of supervisors, nor its committees, nor any of its members shall dictate, suggest or interfere with appointments, promotions, compensations, disciplinary actions, contracts, requisitions for purchase or other administrative recommendations ... under the respective boards and commissions.
 
 
 48
 Although this provision on its face might appear only to preclude the Board from interfering with essentially internal affairs of the Commission, it has been interpreted far more broadly than that by the California courts. "It was the definite intention [of the framers] to effectively deprive the Board of Supervisors of all administrative powers." Kennedy v. Ross, 28 Cal.2d 569, 577, 170 P.2d 904, 909 (1946). Nor is "administrative" to be interpreted narrowly:
 
 
 49
 It is evident that this is not merely a stringent provision for separation of powers within city government, but a rigorous limitation on certain typical functions of a general legislative body as well.
 
 
 50
 Eller Outdoor Advertising Co. v. Board of Supervisors of San Francisco, 89 Cal.App.3d 76, 79, 152 Cal.Rptr. 358, 359-60 (1979).
 
 
 51
 Eller itself is an example. The Board in that case had passed a resolution "calling the attention of the Port Commission to the Adverse Effects of Billboards on Northern Waterfront Property." The problem with which Eller wrestled was whether this expression was an interference with the Port Commission's administration of billboard contracts. Eller held that this mere suggestion could not be a dictation or interference within the meaning of Charter Sec. 2.401, but the court's labors were unnecessary if the Board had power simply to pass an ordinance regulating billboards out of existence on the Northern Waterfront.
 
 
 52
 In our view, the Board's ordinance in this case goes beyond the limits implied by Eller. It is true that the ordinance, if given effect, would not violate the Airline Agreement, because such regulation would fall within the saving clause of Sec. 905 of that Agreement. But the ordinance clearly intrudes into an area that the Commission, under its grant of authority, is authorized to regulate, by contract as well as by other means. The ordinance is directed only to the Airport, and then only to parties contracting with the City (through the Commission). Whatever broad powers of general legislation may be left to the Board, this targeted ordinance intrudes on the area of contract administration delegated to the Commission by Charter Sec. 3.691 and protected from the Board by Sec. 2.401. It follows that it cannot be enforced against the Airlines.
 
 CONCLUSION
 
 53
 In sum, we find that the City's ordinance is ineffective under the provision of the City Charter because it interferes with the Commission's broad authority to administer the Airport and regulate the parties with whom it contracts. In reaching this conclusion, we do not rule on the existence or extent of general legislative authority of the Board of Supervisors over the Airport or the Commission. We simply rule that the Board lacked the power to enact the ordinance before us, which dealt in particularity with contracting parties at the Airport.
 
 
 54
 The judgment of the district court is AFFIRMED.
 
 
 
 [1]
 Additionally, the ordinance provides that the prevailing rate of wage "shall have the same meaning as set forth in Section 16012, Title 8, California Administrative Code." Id. Sec. 2(a). Section 16012 requires straight time hourly pay; holiday and overtime pay; various benefits for employees and their families; and travel time. Cal.Admin.Code, Sec. 16012(1)-(4)